[No. 25603. Department Two. September 5, 1935.]

G. J. FISHER, *as Administrator and Individually, Appellant,* v. HEMRICH BREWING COMPANY *et al., Respondents.*[1]

*Burkey & Burkey,* for appellant.

*Ellis & Evans, Eggerman & Rosling,* and *R. L. Johnson,* for respondents.

HOLCOMB, J.—This appeal is brought to review a nonsuit granted by the court below, on motion of respondents at the conclusion of the evidence on behalf of appellant, in an action for damages for the death of appellant's decedent and for damages to his own person and property. The action was the result of a collision between a Pontiac automobile, owned and

[1]Reported in 49 P. (2d) 1.

driven by appellant, and a Chevrolet truck, leased to respondent Brewing Company for delivery of its products, which was driven at the time by respondent Bucholz.

The collision occurred in Tacoma, at the intersection of south Ninth street and Ainsworth avenue, on March 21, 1934, at about 3:30 in the afternoon. South Ninth street is a hill street, running east and west, and the slope is to the east. Ainsworth avenue runs north and south, intersecting south Ninth street at right angles, and is practically level at and within the vicinity of the intersection. On the day in question, appellant was driving his car, with his wife and stepdaughter, in an easterly direction on south Ninth street, while at the same time the Chevrolet truck was being driven by respondent Bucholz northerly on Ainsworth avenue. The block on which Bucholz was driving is a double block, six hundred feet long.

Drawing all inferences in favor of appellant, it appears from his testimony and the evidence adduced in his behalf that he approached the intersection at a lawful rate of speed; that upon his right as he approached Ainsworth avenue there was a house with some shrubbery and a four-foot terrace in the yard, making a somewhat obstructed view as to the intersecting street on his right. He testified that, as he approached Ainsworth avenue, he was traveling at twenty miles per hour, which, of course, was well within the speed limit of twenty-five miles per hour between intersections; that, when he reached the house where the terrace sloped, he took his foot off of the accelerator, the view being obstructed by the bushes and shrubbery; that he cut down his speed to a mile or two less than fifteen miles per hour; that he could then see about one hundred ten feet to his right; that, when he first came to within sixty or seventy feet of

the intersection, he could look down the street a distance of about seventy feet and that there was nothing within his vision; that he then looked the other way, to his left; that, as he entered the intersection, he speeded up to about fifteen miles per hour; that he had proceeded so that two to three feet of the front end of his car had passed out of the intersection when struck.

He further testified that, after passing the obstructions to his view, he looked to his right and kept looking to the right until within forty feet of the intersection, when he looked to his left; that, at this distance, he could not see the entire length of the block to the right because his car was small and low, but that he could see down Ainsworth avenue approximately two hundred feet; that there was nothing in his vision and that he did not see the truck until the cars came together; that his car was equipped with four-wheel brakes, and that in going at a speed of fifteen miles per hour he could probably stop within eight feet.

On cross-examination, he stated that, if he had looked when he reached the curb line extended on his right, he could have seen the truck, that there was no doubt about that, and that he could have stopped within eight feet, but that he didn't look after he had looked to the right at about forty feet away from the intersection; that there was nothing within his range of vision at this forty foot point to cut off his view.

An eye witness, produced by appellant, testified positively that the truck was within sixty feet of the intersection as appellant entered it and was traveling at not less than thirty-five miles per hour; that its great speed attracted his attention; that he was seated on the porch of a house on south Ninth street below Ainsworth avenue so that appellant, coming down south Ninth street, was coming toward him from the west and the truck driven by Bucholz was coming to-

ward the witness from the south in a northerly direction; that he was looking toward the intersection and first saw the truck when it was about sixty feet from the intersection; that he had driven an automobile for a number of years, was a railroad man, and was a good judge of the speed of automobiles; that he judged the speed of the truck was thirty-five miles per hour; that he kept his eyes on the truck until the collision; that there was no obstruction from his location and he could see the truck approaching on Ainsworth avenue; that, looking up south Ninth street, he also had a clear view of the intersection and that appellant's car had passed the center of the intersection when struck. Another witness for appellant testified that, about three blocks away, the speed of the truck was about thirty-seven miles per hour.

The truck came into collision with the car of appellant with such force as to whirl the car around several times, burst open the doors on the right side next the truck, shatter the glass in both the front and rear of the car, throw Mrs. Fisher out of the right front door against the curbing at the northeast corner of the intersection, killing her, and shoved the car sideways until it came to rest about seventy feet away, badly wrecked. The rear end of the truck was thrown into the air until it nearly fell over on its side, due to the sudden stop, and after righting itself, it proceeded in a curve, crossed the intersection, jumped a six-inch stone curbing, ran down the sidewalk, curved to the right and came to rest after it had proceeded about eighty-eight feet from the point of the collision, where it was stopped by a tree, ten or eleven inches in diameter, uprooting it and damaging the truck so that it was rendered unfit for use. The force of the impact was so great as to be heard by people living about three blocks away, and sounded like a blast of dynamite

to occupants of a house about one hundred forty feet away, shaking the house and rattling the windows.

■ From the force, violence and results of the collision, appellant argues that it may be inferred from such evidence that the speed of the truck was much greater than thirty-five miles an hour, and that the testimony of the witnesses as to its speed was no more than estimates; citing *Osborn v. Seattle,* 142 Wash. 25, 252 Pac. 164; *Day v. Polley,* 147 Wash. 419, 266 Pac. 169; *Copeland v. North Coast Transportation Co.,* 169 Wash. 84, 13 P. (2d) 65; and *Gaskill v. Amadon,* 179 Wash. 375, 38 P. (2d) 229, to the effect that the jury might infer excessive speed from the violence of the impact and the results therefrom.

The difficulty with that argument is that no such justifiable inference can be drawn from such circumstances and results, because of the positive evidence produced by appellant by eye witnesses as to the rate of speed of respondent's truck.

Appellant also cites a number of cases to the effect that, in order to sustain a nonsuit or justify the granting of a motion *non obstanto veredicto,* it must appear that there is neither evidence nor reasonable inference therefrom which would have sustained a verdict in favor of plaintiff; that appellant is entitled to the benefit of all of the evidence and all the inferences from the evidence in the case; citing *Larson v. Olson,* 167 Wash. 253, 9 P. (2d) 68; *Harry v. Beatty,* 177 Wash. 153, 31 P. (2d) 97; *Gaskill v. Amadon, supra,* and other like cases.

■ The governing statute is Rem. Rev. Stat., § 6362-41 [P. C. § 196-41], which, so far as material, reads:

"(14) Drivers, when approaching public highway intersections, shall look out for and give right of way to vehicles on their right, simultaneously approaching

a given point within the intersection, and whether such vehicles first enter and reach the intersection or not:
. . ."

Appellant also relies on *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533.

A very recent case, quite similar in its facts to the instant case, is *Hoenig v. Kohl*, 182 Wash. 245, 46 P. (2d) 728. In that case, tried to the court and a jury, the trial court granted a judgment n. o. v. in favor of defendant, in an action for personal injuries sustained in an automobile collision. We there said:

"Drawing all inferences in favor of the appellant, it appears from her testimony that the appellant approached the intersection at a lawful rate of speed, that he looked in the direction from which respondents' car was approaching, and that, at that time, the approaching car was not more than half a block distant and was then clearly seen by the witness; that both cars continued on, and that the collision occurred as the forward part of appellant's car was passing out of the intersection. Appellant's car was struck near the rear, while that portion of it was still within the intersection."

The opinion then quotes at large from the testimony of appellant.

The only difference between that case and this is that appellant testified that he did not see the car of respondent, although he produced a witness who testified that it was within sixty feet of the intersection when appellant entered the intersection, it being true, as the trial court said and as we have often held, that it was there and should have been seen by appellant.

Quoting further from the last cited case, we said:

"Having in mind the rule laid down in *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, and the cases which follow it, there is here no room for reasonable minds to differ. If the appellant looked, as it is said he did, then he saw, or was charged with the duty of

seeing, the approaching car, and was bound in law to know that its rights in the intersection were superior to his own. Being the disfavored driver, it was incumbent upon him to yield the right of way unless the situation was such as to clearly indicate that he could cross with a fair margin of safety. In the light of the quoted testimony, no reasonable mind can believe that the appellant exercised that care which the law required of him. The burden was upon the appellant to produce evidence of facts which would justify him in proceeding into the intersection. This, he did not do, and upon the uncontradicted testimony, reasonable minds must agree that the appellant was guilty of contributory negligence in driving into the intersection under the conditions shown.''

See, also, *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411.

Under the rules stated in the above cited case, we are bound to conclude that the trial judge correctly held that appellant was guilty of contributory negligence as a matter of law.

The judgment is therefore affirmed.

STEINERT, BLAKE, and MITCHELL, JJ., concur.

### ON REHEARING.

[*En Banc.* February 3, 1936.]

PER CURIAM.—Upon a rehearing *En Banc,* the court adheres to the Departmental opinion heretofore filed herein.