[No. 26084. *En Banc.* November 9, 1936.]

BRUNO HUBER, *a Minor, by John Huber, his Guardian ad Litem, Respondent,* v. HEMRICH BREWING COMPANY, *Appellant.*[1]

[1]Reported in 62 P. (2d) 451.

236

*Ralph S. Pierce, Edwin J. Cummins,* and *Gordon H. Sweany,* for appellant.

*Poe, Falknor, Falknor & Emory* and *Perry R. Gershon,* for respondent.

BLAKE, J.—This action grows out of a collision between an automobile, driven by plaintiff, with a truck, owned by the defendant. The collision occurred shortly after twelve o'clock midnight, at the intersection of Olive way and Westlake avenue, Seattle. Olive way runs east and west; Westlake avenue takes a northerly and southerly course. The streets do not, however, intersect at right angles. Coming from the south, Fifth avenue runs into Westlake avenue just south of Olive way. From the north, Fifth avenue runs into Westlake right at Olive way. We thus have traffic from six different directions entering a common intersection. There is a stop-and-go traffic light suspended in the center of the intersection, but this had ceased to function at twelve oclock. There were no stop signs on Olive way on either side of Westlake.

Plaintiff, traveling east, entered Olive way at Fourth avenue. Defendant's truck, traveling north, entered Westlake at Pike street. From there, it is two blocks to Olive way.

There was evidence proffered by plaintiff to the following effect: As he approached Westlake, he

slowed down to five miles per hour. At the curb line of Westlake, he looked to left and right. He saw nothing on his left. On his right, coming north on Westlake, he observed ''a big car about three hundred feet'' away. Thinking he had ample time to cross in front of it, he shifted into intermediate, and, without again looking to his right, proceeded across the intersection at a speed of twelve to fifteen miles per hour. As his car neared the east curb line of Westlake, it was struck in the middle of its right side by the truck. It was rolled over one and a quarter times and came to rest on its left side, headed east, at the northeast curb of Westlake and Olive way. The truck, too, turned over on its side and lay headed east in Olive way east of the Westlake curb line.

The cause was tried to a jury, which returned a verdict for plaintiff. From judgment on the verdict, defendant appeals.

Appellant has made eleven assignments of error, which, for the purpose of discussion, may be grouped as follows: (1) Contributory negligence of respondent; (2) negligence of the driver of appellant's truck; (3) instructions given and requested instructions refused.

*First:* Appellant contends that, under the rules laid down in *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, respondent was guilty of contributory negligence, as a matter of law, in that (a) he failed to yield the right of way, and (b) he did not look again to his right after entering the intersection. As to the first contention, we think the evidence of respondent made a case for the jury. When he looked south on Westlake and saw the truck three hundred feet away, he had a right to assume that it was traveling at a lawful rate of speed. From where he did look, he had seventy-eight feet to go to cross the path

of the truck. At the rate respondent was going, he would have been across Westlake in four-plus seconds. Assuming the truck to have been three hundred feet away when respondent saw it, and that it was traveling twenty-five miles per hour, it would have reached Olive way in eight-plus seconds. Under these facts, as established by respondent, we do not think that the margin of safety was so narrow as to hold respondent guilty of contributory negligence, as a matter of law, under the rules laid down in *Martin v. Hadenfeldt, supra.*

This is not one of those cases where it can be said that the margin of safety was so narrow that the attempt of the disfavored driver to cross amounted to a contest for the right of way. Some of the cases of that character relied on by appellant are *Overaa v. Tacoma Bus Co.,* 168 Wash. 392, 12 P. (2d) 415; *McAllister v. Anderson,* 169 Wash. 14, 13 P. (2d) 36; *Hemrich v. Koch,* 177 Wash. 272, 31 P. (2d) 529; *Ota v. Anti-Saloon League,* 179 Wash. 411, 37 P. (2d) 894. The facts of these cases make them clearly distinguishable from the case at bar.

Whether the respondent was guilty of contributory negligence in failing to look to his right again after starting across Westlake, was also a question for the jury. Ordinarily, it is for the jury to say whether one, having looked on entering an intersection, should look again. In *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 Pac. 756, the court said:

"We have, time and again, said that one must, before undertaking to cross a street, look for approaching vehicles, but whether, after so doing and while making the crossing, he must again look or continue to look, depends on many circumstances and conditions; such as the amount of traffic; the probability of there being approaching vehicles; whether the statutes or ordinances give him the right of way;

whether other objects or things have attracted his attention. Manifestly this is a question for the jury.''

Appellant contends, however, that this is not an ordinary intersection, and that the rule is, therefore, inapplicable. We think the argument overlooks the gist of the rule, which is that one must look on entering an intersection, or he is guilty of negligence, as a matter of law; but if, having done so, he fails to look again, the question of his negligence is a matter of fact for the jury—taking into consideration the circumstances and conditions as indicated in the above quotation. We think the rule applicable here, notwithstanding traffic converged into the intersection from six directions instead of four, as at the ordinary intersection.

*Fisher v. Hemrich Brewing Co.,* 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198, is cited by appellant. The case is clearly without the rule we have quoted. There the disfavored driver looked when he was forty feet away from the intersecting street, and did not look again before the collision.

*Second:* Appellant contends that the driver of its truck was not negligent. It was admitted that, at the time of the collision, he was traveling at a rate of speed between twenty-three and twenty-five miles per hour. It is also conceded that this is an intersection where the driver's view is obstructed, in contemplation of Rem. Rev. Stat., § 6362-3 [P. C. § 196-3], subd. (b) 2. Besides defining an obstructed view, that subdivision provides:

''It shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding . . . ·
''Fifteen miles an hour in traversing an intersection of highways when the driver's view is obstructed.''

Appellant contends that, in view of subd. (b) 5 and

subd. (d) of the same section, the provision just quoted is not effective within incorporated cities and towns. Subd. (b) 5 provides:

"It shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding . . .
"Twenty-five miles an hour within the limits of any incorporated city or town."

Subd. (d) of the same section provides:

"Local authorities in their respective jurisdictions are hereby authorized in their discretion to increase the speed which shall be prima facie lawful upon highways at the entrance of which vehicles are by ordinance of such local authorities required to stop before entering or crossing such highways. Local authorities shall place and maintain upon all highways upon which the permissible speed is increased adequate signs giving notice of such special regulations and shall also place and maintain upon each and every highway intersecting any said highway, appropriate stop signs, which shall be illuminated at night or so placed as to be illuminated by the headlights of an approaching vehicle or by street lights."

Apparently attempting to exercise the authority conferred under subd. (d), the city council provided by ordinance:

"It shall be lawful for the driver of a vehicle to drive the same at a speed not exceeding the following:
"Fifteen (15) miles per hour: (1) in traversing an intersection where the driver's view is obstructed, *except on arterial highways* and at intersections controlled by traffic signals when such signals are in operation. . . .
"Twenty-five (25) miles per hour: (1) throughout the city, except as otherwise limited or extended by this code." Ordinance No. 64692, § 40.

For the purpose of this discussion, it may be conceded that Westlake avenue is an arterial highway at the intersection of Olive way. (There is some dis-

pute about it, but we do not deem it material to a decision of this case.) Appellant contends that, under the provisions of the ordinance above quoted, the driver of its truck had a right to cross Olive way at a speed up to twenty-five miles per hour. The fallacy of this contention is that the city council, in attempting to exercise the power conferred by subd. (d), failed to comply with the conditions required to make the exercise of the power effective. No stop signs were posted on Olive way on either side of Westlake. Nor were any signs posted giving notice of the increased permissible speed. Without the stop signs, respondent was entitled to assume that the speed limit in the intersection was not more than fifteen miles an hour, and, in the absence of signs giving notice of an increased speed limit, the driver of respondent's truck had no right to assume that it was more. See *Seattle v. Strang,* 169 Wash. 686, 14 P. (2d) 1112, where this court said:

"It is contended in behalf of Strang, as we understand his counsel, that the city, having established Eastlake avenue as an arterial highway and having placed stop signs at appropriate places on or near its side lines at streets intersecting it, has, in effect, increased the permissible speed limit upon the avenue to forty miles per hour, the extreme limit prescribed by the state law. We cannot agree with this contention. The 'local authorities,' that is, the city authorities, have not only failed to place 'adequate signs giving notice of such special regulations,' but have not prescribed in any manner such special regulations."

*Third:* The court gave the following instruction:

"I further instruct you that if you find from the evidence in this case that the driver of the defendant's truck, at the time and place in question, by the exercise of ordinary care saw, or should have seen, the minor plaintiff's car, after it became apparent

that it was intending to cross the intersection, in time, by the exercise of ordinary care, to have avoided a collision therewith, then I instruct you that the defendant would be liable in this case for the damages and injuries caused by this collision.''

Appellant condemns this as an erroneous statement of the last clear chance doctrine, which, in any event, it contends, was not applicable under the facts of the case. Respondent does not attempt to justify it as a statement of the doctrine of last clear chance, but seeks to sustain it as an instruction on *negligence*. We cannot so regard it. As we read it, it is either an erroneous statement of the doctrine of last clear chance, or it is a statement of the doctrine of comparative negligence. In either aspect, it cannot be approved. It contains the vices of the instructions condemned in *Mosso v. Stanton Co.*, 75 Wash. 220, 134 Pac. 941, L. R. A. 1916A, 943, wherein Judge Ellis, after stating the two phases of the doctrine of last clear chance, said:

''An examination of a vast number of authorities induces our conviction that the application of the rule as above outlined is much broader than that countenanced by many courts, and is as broad as can be applied without in effect overruling all of our own decisions sustaining the defense of contributory negligence and adopting in its stead the doctrine of comparative negligence, a doctrine against which this court has set its face from the beginning.''

It must be borne in mind that, under the decisions of this court, the application of the doctrine of last clear chance must be predicated on negligence on the part of the person injured. *Mosso v. Stanton Co., supra; Leftridge v. Seattle,* 130 Wash. 541, 228 Pac. 302. In the latter case, the court concisely stated the rule as follows:

''Thus we have two different situations to which the last clear chance rule applies. In the one, the

plaintiff's negligence may continue up to the time of the injury if the defendant *actually sees* the peril; in the second, the plaintiff's negligence must have terminated if the defendant did not actually see the peril, but by the exercise of reasonable care *should have seen* it.''

In neither aspect is the rule applicable to the facts of this case. For, on the one hand, the driver of appellant's truck did not *actually see* respondent's peril; and, on the other, respondent's negligence (assuming the jury had found him guilty of negligence) had not terminated at the time of the collision.

■ Although the judgment must be reversed because of the error in giving the above instruction, we think error in another instruction should be noticed. In this instruction, the court, among other things, said:

''I therefore instruct you that all rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.''

This should have been qualified by some statement to the effect that the primary duty to avoid such collisions is on the driver to the left.

The judgment is reversed, and the cause remanded with directions to grant a new trial.

MAIN, MITCHELL, TOLMAN, BEALS, and GERAGHTY, JJ., concur.

STEINERT, J. (concurring in the result)—I concur in the result, upon the reasoning and views of the majority as expressed in the discussion of the first and third group of assignments of error.

MILLARD, C. J., and HOLCOMB, J. (dissenting)—We think the judgment should be affirmed.