[No. 27186. Department Two. November 22, 1938.]

FRANK GIBSON et al., Respondents, v. SPOKANE UNITED RAILWAYS, Appellant.[1]

Post, Russell, Davis & Paine, for appellant.

Joseph J. Lavin, for respondents.

MILLARD, J.—This action was brought to recover for property damage and for personal injuries sustained by Frank Gibson and wife and their minor niece in a collision of their automobile with a bus, owned and operated by the defendant, at the intersection of Stone street and Joseph avenue, in Spokane. Trial of the cause to a jury resulted in a verdict in favor of the plaintiffs. From the judgment entered, motion for

[1] Reported in 84 P. (2d) 349.

judgment notwithstanding the verdict having been overruled, the defendant appealed.

The verdict of negligence against the appellant is unchallenged. The sole contention of counsel for appellant is that the evidence adduced precluded any right of the respondents to recover, therefore the motion for judgment notwithstanding the verdict should have been granted.

Such a motion, we have uniformly held, can not be granted unless the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict. All competent evidence in the record which is favorable to the respondents we must regard as true and must give them the benefit of every favorable inference which may reasonably be drawn from such evidence. Where the minds of reasonable men may differ, the question should be submitted to the jury. If, when so considered, we find there is substantial evidence to sustain the verdict, the judgment must be affirmed. *Hart v. Hogan,* 173 Wash. 598, 24 P. (2d) 99; *Boyd v. Cole,* 189 Wash. 81, 63 P. (2d) 931; *Vercruysse v. Cascade Laundry Co.,* 193 Wash. 184, 74 P. (2d) 920; *Perren v. Press,* 196 Wash. 14, 81 P. (2d) 867.

The evidence on behalf of respondents is summarized as follows:

Frank Gibson testified that he was operating a Ford sedan north on Stone street, which is forty feet wide from cross-walk to cross-walk, in Spokane, July 23, 1937, about seven o'clock in the evening, at which time the sun was shining. Mr. Gibson's wife sat on the right side of the front seat with her husband. Their minor niece was in the rear seat of the automobile. Stone street intersects, at right angles, Joseph avenue, an east and west highway, which is forty feet wide.

Neither road is an arterial highway and both are unpaved but graveled.

Respondents' automobile was approaching the intersection at the rate of fifteen to eighteen miles an hour. When approximately one hundred and fifteen feet south of the intersection, Mr. Gibson reduced the speed of his automobile to permit an automobile two hundred feet distant approaching from the west to continue easterly on Joseph avenue. Just prior to the arrival of respondents' automobile at the intersection, an automobile traveling north on Stone street passed on the left side of respondents' automobile, turned to the right in front of respondents' automobile, and proceeded east on Joseph avenue. Those two automobiles traveling east on Joseph avenue left to their rear a large cloud of dust. Both cars were almost out of sight when respondents arrived at the intersection, when Mr. Gibson again looked to the east and to the west.

Mr. Gibson first looked to the east when his automobile was sixty feet south of the intersection, from which place a house at the southeast corner of the intersection did not obstruct his view to the east. From the point where he made his first observation, Gibson had an unobstructed view of from one hundred and fifty to one hundred and seventy-five feet east on Joseph avenue, within which distance the dust raised by the two automobiles traveling east on Joseph avenue had settled. Within the range of his visibility, Gibson could not see any vehicular traffic approaching from the east.

Just as his automobile entered the intersection, Gibson again looked to the east. At that point, he had an unobstructed view to the east on Joseph avenue for a distance of one hundred and fifty to one hundred and seventy-five feet, within which range the dust had cleared. In the absence of dust, his range of vision

would have been four hundred to five hundred feet. He did not see any vehicles approaching the intersection from the east. Respondents' automobile then proceeded across the intersection at the rate of fifteen to eighteen miles an hour, a legal rate of speed. When about ten feet south of the north cross-walk and about six feet west of the east cross-walk, Gibson looked to the right and saw appellant's bus, which was about six inches from the north curb of Joseph avenue, about twelve to thirty feet east of the east cross-walk and proceeding west at the rate of thirty-five to forty miles an hour. When respondents' automobile was on the north cross-walk and practically clear of the intersection, appellant's bus swerved to the right and struck respondents' automobile immediately ahead of the rear right wheel, forcing the automobile northwesterly over and across the parking strip on to the west side of Stone street, a distance of forty feet.

Mr. Gibson's testimony that the collision took place practically on the north cross-walk was corroborated by one of appellant's witnesses. The operator of appellant's bus gave as his reason why he did not proceed straight across the intersection "or pull to the left" that he never saw respondents' automobile until the collision because "I was blinded by the sun."

Mrs. Gibson's testimony is corroborative of her husband's version of the accident, with the exception that she saw the bus when their automobile entered the intersection. She testified that, just as their automobile crossed the south cross-walk and entered the intersection, she could see the bus about one hundred feet east of the intersection on Joseph avenue, but that she did not inform her husband of that fact. Just as the respondents' automobile arrived at the north cross-walk, the right front wheel of the bus was across the drain at the northeast corner of the intersection, and

just as the bus "crossed there, he turned the wheel right toward us," and the collision resulted. She also testified that, at that time, the operator of the bus was looking to the north and not to the front.

Counsel for appellant argue that the cloud of dust did not prevent one of the witnesses, who was a block distant from the scene of the accident, from seeing the bus, and that the dust did not prevent Mrs. Gibson from seeing the bus before the automobile in which she was riding entered the intersection; therefore, the bus being in plain sight somewhere between one hundred to one hundred and fifty feet east of the point of respondents' entrance to the intersection, Mr. Gibson's failure to observe the statutory mandate to give the right of way to a vehicle on his right "simultaneously approaching a given point within the intersection" constituted contributory negligence, which bars recovery by him or those with him in his automobile.

█ Counsel for appellant insist that we held in *Fisher v. Hemrich Brewing Co.*, 183 Wash. 489, 49 P. (2d) 1, which is controlling in the case at bar, that appellant was guilty of contributory negligence and was not entitled to a recovery because he failed to look out for and yield the right of way to the vehicle on his right.

The case cited is inapposite. In that case the plaintiff entered the intersection without looking for and seeing an approaching truck, which was in full view, before he entered the intersection.

"He stated that, if he had looked when he reached the curb line extended on his right, he could have seen the truck, that there was no doubt about that, and that he could have stopped within eight feet, but that he didn't look after he had looked to the right at about forty feet away from the intersection; that there was nothing within his range of vision at this forty foot

point to cut off his view." *Fisher v. Hemrich Brewing Co.*, 183 Wash. 489, 49 P. (2d) 1.

The question of contributory negligence was for the jury.

Did Mr. Gibson look to the right before and while entering the intersection? Was appellant's bus within one hundred to one hundred and seventy-five feet east of the intersection at the time respondents' automobile entered the intersection? Was there anything in the situation to charge respondents with notice that appellant's bus, if within one hundred to one hundred and seventy-five feet of the intersection, was traveling at such an excessive rate of speed that it would traverse that space in time to collide with respondents' automobile, which was traveling at a lawful rate of speed, before respondents' automobile had passed out of the intersection? Were respondents, under the circumstances, justified, as reasonably prudent persons, in assuming that they had a proper margin of safety in crossing the intersection ahead of the bus? Was respondents' automobile on the north cross-walk and outside of the intersection when struck by appellant's bus?

The evidence presented for determination the foregoing questions, all questions of fact for the jury. There was competent evidence to warrant the jury in finding that Mr. Gibson looked to the right before entering the intersection; that no vehicle was within the range (one hundred or more feet) of respondents' vision to the right; that appellant's bus was within one hundred feet of the intersection but there was nothing in the situation to charge respondents with notice that they did not have a margin of safety in crossing the intersection ahead of the bus; and that respondents' automobile was outside of the intersection when struck by appellant's bus.

Where the operator of an automobile takes some precaution, such as looking when at the place necessary to exercise such precaution, and the motor vehicle in the favored position is then not within the disfavored driver's range of visibility—one hundred to one hundred and seventy-five feet in the case at bar—and the favored operator at the time is violating the law, relating to speed, thus being guilty of negligence *per se,* and the automobile which is in the disfavored position is struck in the rear when across, or nearly across, the street intersection by the car in the favored position, the question of contributory negligence on the part of the operator of the car in the disfavored position is plainly one for the jury. There would be no justification for the court to assume that the disfavored driver did not under such facts have a proper margin of safety in crossing. Respondents had the right to assume that the driver of any motor vehicle—whether or not it was one hundred to one hundred and seventy-five feet east of the intersection—approaching from the right would not travel in excess of the legal rate of speed, unless, of course, respondents had actual notice that a machine was approaching from the right at an excessive rate of speed; such notice respondents did not have, the jury were warranted in finding.

We held in *McHugh v. Mason,* 154 Wash. 572, 283 Pac. 184, that the statute requiring motor vehicle operators to look out for and give right of way to vehicles on their right simultaneously approaching a given point within a street intersection gives only a relative right of way; and contributory negligence in failing to concede the right of way is a question for the jury where the operator of a slowly moving car looked before proceeding to cross and saw no approaching car proceeding from the right and was struck when more than half way across the street.

In *Martin v. Westinghouse Elec. & Mfg. Co.*, 162 Wash. 150, 297 Pac. 1098, the driver in the disfavored position when about to enter the intersection saw another car approaching from his right a little more than one hundred feet distant, and there was nothing to indicate to him that it was exceeding the lawful rate of speed. We held that the question whether the disfavored driver was guilty of contributory negligence in failing to give way to the car approaching from his right where the disfavored driver's car was struck after traveling in the intersection thirty or forty feet at the rate of twelve or fifteen miles per hour while a car in the favored position had to travel one hundred and twenty feet to reach the intersection and would not have struck the plaintiff if it had not been exceeding the speed limit of fifteen miles per hour at the intersection, was a question for the jury; there may have been a margin of safety, and plaintiff had a right to assume that defendant would not exceed the speed limit.

The facts in the case at bar are much stronger in favor of respondents. Appellant's bus was at least one hundred feet or more from the intersection when respondents entered it. Even if the bus was then seen, as respondent's wife testified, it can not be held, as a matter of law, that there was not a reasonable margin of safety, nor that Mr. Gibson failed to act as a reasonably prudent person in attempting to cross the intersection; because, if the bus had not been exceeding the speed limit in approaching the intersection and in crossing the portion which it traversed before the impact, the respondents would have had ample time to have passed out of the intersection and there would have been no collision. There is evidence that respondents' automobile *was outside of the intersection* when the collision occurred.

See, also, *Nelson v. Owens,* 166 Wash. 647, 8 P. (2d) 301, in which it is held that the contributory negligence of one approaching an intersection in the disfavored position is a question for the jury, where he slowed down and got across the intersection at lawful speed before the car at the right approaching at unlawful speed struck the rear wheel of his car after it had passed beyond the intersection.

In *Comstock v. Smith,* 183 Wash. 94, 48 P. (2d) 255, we held that the evidence sustained a finding of no contributory negligence on the part of plaintiff, whose automobile, in the disfavored position, was struck in the rear when nearly across a street intersection, where there was evidence of excessive speed and admitted negligence on the part of defendant, and plaintiff, even if he had seen defendant's automobile, would have been justified in assuming that he had a proper margin of safety in crossing.

See, also, *Swanson v. Sewall,* 183 Wash. 462, 48 P. (2d) 939.

In *Thompson v. Fiorito,* 167 Wash. 495, 9 P. (2d) 789, 12 P. (2d) 1119, we held that it is for the jury to determine whether the operator of an automobile at a street intersection was guilty of contributory negligence in not giving way to a truck approaching on the right, where he saw the truck one hundred and fifty to one hundred and seventy-five feet from the intersection when he was twenty feet from the entrance to the intersection and would have crossed in time unless the truck was traveling at a grossly excessive rate of speed; that whether the one in the disfavored position was guilty of contributory negligence depended upon whether he acted as a reasonably prudent person, being in the disfavored position, in attempting to cross the intersection while the car in the favored position was approaching; that he had a

right to assume that the one in the favored position would not exceed the speed limit as fixed by law.

The question whether Mr. Gibson in starting across the intersection acted as a reasonably prudent person would have acted under the same circumstances, was a question of fact for the jury.

The judgment is affirmed.

STEINERT, C. J., BEALS, GERAGHTY, and SIMPSON, JJ., concur.