[No. 28750. Department One. January 12, 1943.]

ANDREW BILLINGSLEY, *Respondent*, v. ROVIG-TEMPLE COMPANY *et al.*, *Appellants.*[1]

[1]Reported in 133 P. (2d) 265.

*Bruce Bartley* and *Max R. Nicolai,* for appellants.

*O. R. Schumann,* for respondent.

STEINERT, J.—This is an action to recover damages for injuries to person and property resulting from an automobile collision. The cause was tried to a jury, and at the close of plaintiff's case defendants challenged the sufficiency of the evidence and moved for a nonsuit. The challenge was overruled and the motion was denied. On submission of the case to the jury, a verdict was returned in favor of the plaintiff. Defendants thereafter moved for a judgment notwithstanding the verdict, and this likewise was denied. Judgment for plaintiff was then entered, and defendants appealed.

The assignments of error are all predicated upon the refusal of the trial court to sustain the challenge and grant the motions interposed by the appellants as above stated. The sole question now presented on the appeal is whether the trial court should have granted appellants' motions, on the ground that respondent was guilty of contributory negligence as a matter of law, precluding recovery by him.

A challenge to the sufficiency of the evidence, a motion for nonsuit, a motion for a directed verdict, or a motion for judgment notwithstanding the verdict admits the truth of the plaintiff's evidence and all inferences that reasonably can be drawn therefrom, and requires that the evidence be interpreted most

strongly against the defendant, and in the light most favorable to the plaintiff. *Lindberg v. Steele*, 5 Wn. (2d) 54, 104 P. (2d) 940; *Pierce v. Pacific Mut. Life Ins. Co.*, 7 Wn. (2d) 151, 109 P. (2d) 322; *Rieger v. Kirkland*, 7 Wn. (2d) 326, 111 P. (2d) 241; *Fetterman v. Levitch*, 7 Wn. (2d) 431, 109 P. (2d) 1064; *Moen v. Chestnut*, 9 Wn. (2d) 93, 113 P. (2d) 1030; *Simmons v. Cowlitz County*, 12 Wn. (2d) 84, 120 P. (2d) 479.

A court will not be justified in taking from the jury the question of contributory negligence unless the acts committed by the party charged therewith are so palpably negligent that there can be no two opinions concerning them. *Jackman v. Seattle*, 187 Wash. 446, 60 P. (2d) 78; *McFarland v. Commercial Boiler Works*, 10 Wn. (2d) 81, 116 P. (2d) 288; *Richardson v. Pacific Power & Light Co.*, 11 Wn. (2d) 288, 118 P. (2d) 985.

With the foregoing rules in mind, we shall state the facts according to the version most favorable to respondent. The collision occurred in midafternoon of a clear day, within the intersection of west Chestnut street and south Sixth avenue, in Yakima, Washington. These two streets cross each other at right angles.

West Chestnut street, which extends easterly and westerly, is forty feet wide in the block immediately east of the intersection and is paved with oil macadam. South Sixth avenue, which extends northerly and southerly, is sixty-four and five-tenths feet wide in the block immediately north of the intersection and is paved with cement to a width of forty feet along its central portion, on either side of which is a twelve-foot oil macadam strip. A streetcar track runs along the west half of south Sixth avenue, parallel with, and very near, the center line thereof, leaving a twelve-foot space between the west rail and the westerly edge of the cement pavement, or approximately a twenty-four foot strip between the rail and the westerly curb. Both

streets are practically level, and neither is an arterial highway. At the time involved here, the streets were dry.

Respondent, driving his 1938 Dodge sedan, approached the intersection from the east, along west Chestnut street, at a speed of fifteen miles an hour. For a distance of at least seventy-eight feet eastwardly from the intersection there was nothing to obstruct his vision towards the north. A truck, owned by appellant Rovig-Temple Co. and driven by its employee, appellant John Reed, was at the same time approaching the intersection from the north, along south Sixth avenue. Thus, the truck was on the right-hand side of the respondent. There was no other traffic in sight to divert the attention of either driver.

Respondent maintained his course along west Chestnut street into the intersection, and, about the time that his front wheels reached the easterly edge of the cement pavement, twelve feet west of the easterly curb, he for the first time looked to his right and saw appellants' truck approaching from the north, at a distance of one hundred feet from the intersection and at a speed of thirty miles an hour. This was according to respondent's own estimate.

Thus it appears that, from the point where respondent first observed the approaching truck, he himself still had fifty feet or more to traverse in order to clear the intersection entirely, while the truck had to go but one hundred feet to reach the same intersection; further, that, while the truck was twice as far away from a point common to the courses of the two motor vehicles, its speed was twice that at which respondent was then traveling.

In that situation, respondent proceeded on his course, towards and across the center line of the intersection, maintaining his former speed of fifteen miles an hour, but at the same time keeping the truck under con-

tinuous observation and noting that it also was proceeding forward along its course of travel without slackening its speed of thirty miles an hour. According to respondent's testimony, "It come right on; it come right on and so did I."

As the front wheels of respondent's car crossed the center line of the intersection, respondent for the last time took notice of the truck, which was then but sixty feet away. Thus respondent still had more than thirty feet to go in order to clear the intersection entirely, while the truck had but sixty feet to travel before reaching the margin of the intersection; the speed of the truck was, however, still twice that at which respondent was traveling. The hydraulic brakes on respondent's car were in perfect condition, and, according to his own testimony, he could have brought the car to a dead stop within the distance of a foot.

After crossing the center line of the intersection, respondent continued driving forward at the same speed as before, and while his car was still completely within the intersection it was struck upon its rear right wheel by the oncoming truck. According to respondent's testimony, the driver of the truck apparently was unaware of respondent's car until he was "right on him." As the result of the collision, respondent sustained the injuries and loss for which this action was brought.

It is conceded by appellants that the evidence was sufficient to warrant the jury in finding the driver of the truck guilty of negligence in one or more respects. Appellants contend, however, that respondent's evidence, considered in the light most favorable to him, clearly demonstrates that he was guilty of contributory negligence as a matter of law, in that (1) he failed to obey the statutory mandate imposing on him the duty *to look out on approaching* an intersection; (2) he disobeyed the statutory command requiring the driver on

the left to yield the right of way to the driver on the right simultaneously approaching the intersection; (3) he proceeded across the intersection without having regard to the maintenance of a reasonable margin of safety for his own protection; and (4) he failed to stop when he must have realized his dangerous position.

■ The basic rule underlying the first two grounds of appellants' contentions is prescribed by Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846] which provides:

"It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enter and reach the intersection or not: *Provided,* This section shall not apply to operators on arterial public highways."

Construing an earlier statute (Rem. 1927 Sup., § 6362-41, subd. 14), the language of which is almost identical with § 6360-88 above quoted, this court, in the case of *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411, held that the failure of the driver of a vehicle, approaching a public highway intersection, to look out for and give the right of way to a driver on his right constituted contributory negligence as a matter of law. We quote a portion of that opinion:

"Respondent's testimony conclusively establishes the fact that, except for his contributory negligence in failing to comply with the statute above referred to, the injury would not have occurred. He did not, *when approaching* the public highway intersection, look out for and give right of way to the vehicle on his right. He does not claim to have looked to the right until the front end of his car came into the intersection.

"The testimony in the case clearly demonstrates that except for the failure of respondent, when approaching the intersection, to look out for and give right of way to the vehicle on his right, he would have sustained no

injuries. We hold, as a matter of law, that respondent was guilty of contributory negligence, and that the trial court erred when it granted a new trial on the ground that it had erred in sustaining appellants' challenge to the sufficiency of the evidence."

In *Snyder v. Smith,* 124 Wash. 21, 213 Pac. 682, this court expressed the same view with reference to the earlier statute, saying:

"The appellant and respondent were in a situation directly and specifically covered by this subdivision, [Laws of 1921, p. 272, ch. 96, § 28, subd. 6 (Rem. Comp. Stat., § 6340)]. They were approaching a highway intersection and were simultaneously approaching a given point. The duty then was upon the appellant to look out for the respondent's car, which he did, and to give it the right of way, it being a vehicle approaching from his right, which he did not. The respondent had the right to proceed on his course on the assumption that the appellant would obey the law. The appellant saw respondent's stage, knew its rate of speed, knew that it had the right of way, and his duty was to concede that right. This he did not do and his negligence is established, for, as we have so often held, the violation of a positive statute is itself negligence, and there can be no doubt that this negligence contributed to, and was the proximate cause of, the injury."

Similar views were expressed, and the same conclusions were reached, in *Roed v. Washington Laundry Co.,* 160 Wash. 166, 294 Pac. 1023, and *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60.

Respondent in this case failed to comply with both of these requirements of the law. He did not, *on approaching the intersection,* look out for vehicles on his right, nor did he, after entering the intersection area, give the right of way to a, vehicle on his right which was then simultaneously approaching a point located within the intersection and common to the courses of both vehicles. Respondent therefore violated a positive statute and hence was guilty of negligence *per se,*

both immediately before and immediately after entering the intersection.

In addition to the foregoing acts of negligence on the part of the respondent, his actions, or his failure to act properly, were even more pronounced after he had reached the center line of the intersection. We are now referring more particularly to the third and fourth grounds of appellants' contentions. In the well-known case of *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, this court laid down a rule, or set of rules, for the government of vehicular traffic approaching and crossing public highway intersections. Attention was specifically directed to four elements comprising the measure of care and duty to be exercised by the drivers of such vehicles, as follows:

"(1)  All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

"(2)  The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"(3)  If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4)  The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

The two cars here involved did collide within the intersection; hence they were simultaneously approaching a given point within that intersection. Respondent does not claim, nor could he well contend, that he was deceived by the actions of the driver of

appellants' truck, for the respondent was well aware of the exact locations of the two cars, their relative distances from the common point toward which they were both moving, the relative speeds at which they were traveling, and the continuity of speed maintained by each. Therefore, subdivision 4 of the rules above set forth has no application here.

Although all rights of way are relative and the duty of avoiding a collision in this instance rested upon both drivers, the primary duty in that respect was upon the respondent, for he was the driver on the left, and that duty he was required to perform *with a reasonable regard to the maintenance of a fair margin of safety. Martin v. Hadenfeldt, supra; Martin v. Westinghouse Elec. & Mfg. Co.,* 162 Wash. 150, 297 Pac. 1098; *Teshirogi v. Belanger,* 167 Wash. 278, 9 P. (2d) 66; *Sather v. Blodgett, supra; Hamilton v. Lesley,* 174 Wash. 516, 25 P. (2d) 102; *Fisher v. Hemrich Brewing* Co., 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198; *Huber v. Hemrich Brewing Co.,* 188 Wash. 235, 62 P. (2d) 451; *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349; *Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175; *Fetterman v. Levitch, supra; Emanuel v. Wise,* 11 Wn. (2d) 198, 118 P. (2d) 969.

The question, then, is whether respondent, in attempting to cross the west half of the intersection, acted with a reasonable regard to the maintenance of a fair margin of safety. When respondent first saw appellants' truck, it was only one hundred feet from the intersection, while respondent still had at least fifty feet to go in order to reach a point of safety if he proceeded on in front of the truck. A car moving at the rate of thirty miles an hour, the speed at which the truck was moving, travels forty-four feet a second; one moving fifteen miles an hour, the speed at which respondent was driving, travels twenty-two feet a second. There-

fore, when respondent first observed the truck, he had but two and three-tenths seconds in which to clear the intersection ahead of the truck. By putting on his brakes at that time, however, he could have brought his car to a dead stop within a short distance, stated by him as "a foot," and thus have allowed the truck to pass in front, and more than forty feet ahead, of him.

When respondent crossed the center line of the intersection, the truck was but sixty feet away, which, measured in time, amounted to only one and one-third seconds, and respondent had only the same length of time to reach a point of safety if he proceeded forward. Again he could have stopped almost instantly by putting on his brakes and thus have allowed the truck easily to pass in front of him. It is apparent that, unless one of the cars varied its speed under the circumstances, a collision was inevitable. According to his own testimony, respondent was fully aware of all the conditions which would naturally lead to that result. Yet in face of all that, instead of stopping, as he could have done, and yielding the right of way, as he should have done, respondent proceeded forward almost blindly into a zone of imminent danger.

No two automobile collision cases are exactly alike, and no fixed rule can be laid down which will specifically cover every variation of fact in different cases. *Hefner v. Pattee,* 1 Wn. (2d) 607, 96 P. (2d) 583; *Fosdick v. Middendorf,* 9 Wn. (2d) 616, 115 P. (2d) 679. However, this court has had occasion to speak very definitely on the question of what constitutes a reasonable margin of safety, and a reference to one or two cases, where the facts were closely analogous to those presented here, will serve to illustrate the care to be exercised in maintaining a margin of safety commensurate with the needs of self-protection.

In *Emanuel v. Wise,* 11 Wn. (2d) 198, 118 P. (2d) 969, this court discussed the problem of distance and time

in connection with a reasonable margin of safety. The relevant facts, as well as the conclusions of the court, are contained in the following quoted part of the opinion:

"In other words, respondents' [defendants'] truck, appellants' [plaintiffs'] operator judged, was not more than (measured by time) six seconds from the point which both trucks were simultaneously approaching. Appellants' truck was not more than three to four seconds west of that point. That is to say, there was a margin of not more than three to four seconds, of which under his own testimony appellants' operator was aware, in which to clear the intersection before the favored driver [respondent] arrived at the point where the collision occurred.

"Appellants' operator gave no heed to the primary duty resting upon him, as the disfavored driver on the left, of avoiding the accident; a duty which he must perform with reasonable regard to the maintenance of a fair margin of safety at all times. This he did not do. According to his own testimony he had from two to four seconds to take the right of way within the intersection from the one who was entitled thereto. He raced for it and lost. His negligence is established; it contributed to, and was the proximate cause of, the collision."

There is a striking factual similarity between the case at bar and the case of *Hoenig v. Kohl,* 182 Wash. 245, 46 P. (2d) 728. The *Hoenig* case was another instance of an intersectional collision in which the plaintiff was the disfavored driver, that is, the driver on the left. A verdict in favor of the plaintiff was returned, and thereafter the trial court granted a motion for judgment *non obstante veredicto* and entered judgment dismissing the action. In that case, the collision occurred at the intersection of north Fourth and "I" streets in the city of Tacoma. The plaintiff was driving west on north Fourth street; the defendants' car was traveling south on "I" street and, being on

the plaintiff's dextral side, had the superior right at the intersection. Neither street was an arterial highway, and stop signs were not involved.

The plaintiff's injuries were such as to affect his memory, and he had no recollection of the accident. He produced as his principal witness a lady who at the time of the collision was riding beside him as his guest. In its opinion affirming the judgment, this court summarized the factual situation as follows:

"Drawing all inferences in favor of the appellant [plaintiff], it appears from her [the lady witness'] testimony that the appellant approached the intersection at a lawful rate of speed, that he [plaintiff] looked in the direction from which respondents' [defendants'] car was approaching, and that, at that time, the approaching car was not more than half a block distant and was then clearly seen by the witness; that both cars continued on, and that the collision occurred as the forward part of appellant's car was passing out of the intersection. Appellant's car was struck near the rear, while that portion of it was still within the intersection."

Certain other testimony, recited in the opinion, was to the effect that the plaintiff looked to his right just as he entered the intersection, that defendants' car was then in plain view about a half-block distant, that the latter car did not slacken its speed, and that the plaintiff could have stopped his car by putting on his brakes, and had he done so would have kept out of the way of the other car.

Upon those facts, as stated in the opinion, the court said:

"Having in mind the rule laid down in *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, and the cases which follow it, there is here no room for reasonable minds to differ. If the appellant looked, as it is said he did, then he saw, or was charged with the duty of seeing, the approaching car, and was bound in law to know that its rights in the intersection were superior

to his own.  Being the disfavored driver, it was incumbent upon him to yield the right of way unless the situation was such as to clearly indicate that he could cross with a fair margin of safety.  In the light of the quoted testimony, no reasonable mind can believe that the appellant exercised that care which the law required of him.  The burden was upon the appellant to produce evidence of facts which would justify him in proceeding into the intersection.  This, he did not do, and upon the uncontradicted testimony, reasonable minds must agree that the appellant was guilty of contributory negligence in driving into the intersection under the conditions shown."

The facts in the case at bar demonstrate with even greater certainty than do those in the cases above cited that respondent herein failed utterly in giving a reasonable regard to the maintenance of a fair margin of safety for his own protection, and the situation, in our opinion, leaves no room for reasonable minds to differ on that question.  With full knowledge of all the existing circumstances concerning the relative distances and the speeds of the two vehicles, knowing that the truck had the right of way, and with every opportunity to avoid the accident by simply slowing down or stopping, respondent nevertheless proceeded forward into a zone where an accident was inevitable.  His conduct convicts him of contributory negligence as a matter of law, but for which he would not have sustained his injuries.

The judgment is reversed, with direction to the trial court to dismiss the action.

ROBINSON, MILLARD, JEFFERS, and MALLERY, JJ., concur.