**MERRITT, CHAPMAN & SCOTT CORPORATION, Appellant,**

v.

**Rex H. FREDIN, Appellee.**

**No. 17611.**

United States Court of Appeals Ninth Circuit.

Aug. 28, 1962.

Rehearing Denied Oct. 15, 1962.

Gavin, Robinson & Kendrick, John Gavin and Robert R. Redman, Yakima, Wash., for appellant.

Palmer, Willis & McArdle, and Robert J. Willis, Yakima, Wash., for appellee.

Before CHAMBERS and MERRILL, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

This action involves a claim by appellee, Rex H. Fredin, for damages incurred as a result of personal injuries suffered by him in connection with an accident [1] and is brought against the appellant, Merritt-Chapman & Scott Corporation (hereinafter Merritt-Chapman). This being a diversity case, the district court had jurisdiction pursuant to the provisions of 28 U.S.C. § 1332. The matter is brought here under 28 U.S.C. §§ 1291 and 1294.

Briefly, the pertinent facts are as follows:

On October 14, 1957,[2] Merritt-Chapman as the principal contractor was in the process of building the Priest Rapids Dam on the Columbia River in the State of Washington. Wyatt, Kipper-Thorgaard was a subcontractor of Merritt-Chapman engaged in the performing of certain pipe work upon the dam. Fredin, at that time 39 years old, was employed by said subcontractor in work upon the dam as a welder and pipe fitter. All of the subcontractor's employees, including Fredin, were covered by insurance as provided by the Workmen's Compensa-

---

1. Fredin was injured when a rock about the size of an office desk fell on his right leg.

2. The day of the accident.

tion Statutes of the State of Washington.

Prior to October 14th a cofferdam had been erected and below the cofferdam a large excavation had been made in the river bed for the purpose of constructing therein a power house and its appurtenances.

The face of the excavation was about 8 feet away from Fredin and was approximately 25 feet high. At the very top of the face, and embedded in it, was a certain rock about the size of an office desk. The rock face of the excavation was fractured, and between this particular rock and the "parent-wall" there was a two inch crack or crevice. This two inch crack or crevice could be observed by men working above but could not be seen from the bottom of the excavation, where Fredin was working in an area known as Unit 4.[3] Curing and seepage water from above percolated through and down the crevices and fractures in the rock face.

The accident occurred on Monday, October 14th, which was the first day that Fredin worked in Unit 4. The condition of the rock in question was called to the attention of Merritt-Chapman during the week prior to October 14th. On Friday, October 11th, an assistant superintendent and a labor foreman employed by Merritt-Chapman attempted to bar the rock loose, but it would not budge.

Before and at the time of the accident Fredin was in the bottom of the excavation in Unit 4 and was about 8 feet away from the face of the excavation. He was in the process of placing studs in a flange of a 24-inch pipe and in doing this he was working in a kneeling position. While Fredin was working on the pipe, a rock slide occurred, and this particular rock[4] landed on Fredin's right leg. Several men gathered, the rock was removed from his leg, and he was taken to a hospital in Yakima, Washington.

Between the date of injury and the time of trial eight operations were performed on Fredin's right leg. Fredin's doctor testified that he recommended an amputation at mid-thigh, or above.

The jury awarded Fredin $91,360.00, and Merritt-Chapman appealed.[5]

In its opening brief Merritt-Chapman argues seven points which we will set forth and treat separately.

1. Fredin's action against Merritt-Chapman is barred by the Workmen's Compensation Statutes of the State of Washington, and this action should be dismissed as a matter of law.

■ Merritt-Chapman urges that under the law of the State of Washington an employee of any subcontractor who is injured on a construction job is considered an employee of the general contractor on said job. Therefore, the injured employee cannot maintain a common law action against the general contractor to recover damages for his personal injuries. This contention is not well taken. See Merritt-Chapman & Scott Corp. v. Graham, 302 F.2d 930 (9th Cir. 1962); Greenleaf v. Puget Sound Bridge and Dredging Co., 58 Wash.2d 647, 364 P.2d 796 (1961).

2. All of the evidence taken most favorably to Fredin fails to establish any negligence on the part of Merritt-Chapman.

■ The Supreme Court of Washington has said:

"Where the minds of reasonable men may differ, the question [of negligence] should be submitted to the jury. If, when so considered, we find there is substantial evidence

---

3. The excavation was divided laterally into compartments known as "Units".

4. This is the rock described about and referred to as being about the size of an office desk.

5. Merritt-Chapman appealed from the order denying its motion for entry of judgment in favor of defendant pursuant to its motion for directed verdict, and denying defendant's alternative motion for a new trial, and from the final judgment on the verdict entered in this action, and from all other orders and rulings adverse to defendant.

to sustain the verdict the judgment must be affirmed." Gibson v. Spokane United Ry., 197 Wash. 58, 84 P.2d 349, 350 (1938).

 In view of this quotation we believe that the trial judge properly submitted the issue of the alleged negligence of Merritt-Chapman to the jury. Further, we believe that there was substantial evidence to establish negligence on the part of Merritt-Chapman.[6] Therefore, Merritt-Chapman's second contention is without merit.

3. The evidence taken most favorably to Fredin impels the conclusion that the accident was the result of a natural hazard[7] of his place of employment which Fredin assumed as a matter of law.

 It is true that normal risks incident to his employment were assumed by Fredin. However, whether or not the accident was a result of such a risk was a question upon which reasonable men might differ. Therefore, this issue was properly submitted to the jury. From a review of the transcript we believe that there was substantial evidence to sustain the verdict of the jury in this regard.[8]

4. If the rock condition was a hazard produced by the negligence of Merritt-Chapman, this extraordinary hazard was as open and apparent to Fredin as it was to Merritt-Chapman and under the law his action would be barred by reason of contributory negligence and assumption of risk.[9]

 Merritt-Chapman has stated: "If a risk is an extraordinary one it would normally be a jury question as to whether it was open and apparent." Brief of Appellant, p. 34. Here, it was a jury question as to whether or not the hazard was open and apparent and also upon the issues of contributory negligence and assumption of the risk. The jury was instructed upon the law applicable to contributory negligence and assumption of the risk. Since there is substantial evidence to sustain the verdict we will not disturb it.[10]

5. The court erred in admitting certain exhibits and in denying Merritt-Chapman's offer of proof in connection therewith.

These exhibits list medical, hospital, drugs and similar expenses incurred by Fredin as a result of his injury totaling several thousand dollars. Merritt-Chapman contends that the expenses were neither owed nor paid by Fredin, but rather were paid or will be paid from a fund established by the dam construction industry pursuant to the laws of the State of Washington. Further, that by admitting these exhibits into evidence it was made possible for Fredin to obtain a double recovery: Merritt-Chapman offered to prove that all of the items reflected in these exhibits had been or would be paid by the Department of Labor and Industries of the State of Washington.

 It appears that the bills mentioned were paid or would be paid by the Department of Labor and Industries, and according to the law of the State of Washington the Department was subrogated to the rights of Fredin to the extent of such payments against the recovery had from Merritt-Chapman,

6. By returning a general verdict for Fredin the jury found for Fredin on the issue of the alleged negligence of Merritt-Chapman.

7. In arguing point number 3 above Merritt-Chapman refers to a "hazard incidental to the employment" and to an "ordinary risk incidental to the work" which terms are more appropriate.

8. The jury returned a general verdict for Fredin. This verdict constituted a determination that the accident was not a result of a risk incident to Fredin's employment which was assumed by him.

9. For a discussion of the terms "assumed risk" and "contributory negligence" see Walsh v. West Coast Coal Mines, 31 Wash.2d 396, 197 P.2d 233 (1948) and Caron v. Grays Harbor County, 18 Wash. 2d 397, 139 P.2d 626, 148 A.L.R. 626 (1943).

10. By returning a general verdict for Fredin the jury found in his favor on the issues of contributory negligence and assumption of the risk.

and has a lien thereon. See R.C.W. 51.-24.010. Therefore, the trial judge correctly admitted the exhibits in evidence, and properly denied Merritt-Chapman's offer of proof regarding the same.

6. The court erred in submitting prejudicially erroneous principles of law in its charge to the jury, to which Merritt-Chapman excepted, and the Court erred in failing to properly instruct the jury on one issue of law as requested by Merritt-Chapman, to which Merritt-Chapman also properly excepted.

We have noted the instructions referred to above and hold that Merritt-Chapman was not prejudiced by the giving of the instructions in question nor was Merritt-Chapman prejudiced by the failure to give the instruction which it tendered.

■ 7. The amount of the verdict was so excessive as to justify a new trial.[11]

On May 19, 1961, Merritt-Chapman filed a motion which, among other things, asked for a new trial. As one of its grounds for a new trial it referred to the "excessive damages appearing to have been given under the influence of passion or prejudice." This motion was denied. We have previously stated:

"A trial court has broader powers than we to order new trials in large verdict cases. It saw fit not to order a new trial here, which we hold to be within its discretion." Union Pacific R. R. Co. v. Johnson, 249 F. 2d 674, 679 (9th Cir. 1957).

In accordance with the language quoted above we will not order a new trial.[12] It is therefore,

ORDERED, that the judgment of the District Court entered in the above entitled action is hereby affirmed.

11. It is apparent that Merritt-Chapman recognized the seriousness of Fredin's injury and, also, its consequences: "As a result of his injuries Mr. Fredin was hospitalized for considerable periods of time and submitted to surgery to correct the crushing injury to his right leg, but a developing osteomyelitis has rendered it unlikely that surgical correction of the condition will be successful. In fact, the treatment of choice in his case, as expressed by medical witnesses at the time of trial is apparently the amputation of the leg. It was apparent that Mr. Fredin

would not be able to continue his occupation as a welder and pipe fitter in the future and that ultimately he would require rehabilitation into other work after surgical removal of the limb and after being fitted with a prosthesis." Brief of Appellant, pp. 8, 9. (Transcript references omitted.)

12. Further, in view of the nature and extent of the injury, Fredin's loss of earnings, both past and future, and his age, we are not prepared to say that the verdict was excessive.