[No. 23857. Department One. May 26, 1932.]

O. L. VANCE, *Appellant,* v. FRANK McCLEARY *et al.,*
*Respondents.*[1]

*Troy & Troy* and *James P. Neal,* for appellant.

*Battle, Hulbert & Helsell,* for respondents.

MITCHELL, J.—This is an automobile collision case.
The accident occurred in Olympia at the intersection
of Capitol Way, an arterial highway, and Ninth street.
Upon motion of the defendants, a judgment in their
favor was entered dismissing the action, notwithstand-
ing a verdict for the plaintiff. The plaintiff has ap-
pealed.

It was charged in the complaint that the collision
and consequent injuries and damages were caused by
the negligent manner in which respondents' automobile
was driven. The respondents denied all allegations of
negligence, and affirmatively pleaded contributory neg-
ligence on the part of the appellant as the proximate

'Reported in 11 P. (2d) 823.

cause of the collision. The affirmative plea was denied by a reply.

The determinative facts of the case were testified to by only the appellant and Mrs. Frank McCleary, the latter being one of the respondents. Altogether, the evidence is no stronger for the appellant than his own version of the accident and surrounding circumstances, which was substantially as follows:

He was driving south on Capitol Way ten or twelve miles an hour as he approached the intersection, as he first testified. At another time he said he was traveling twenty miles an hour, and at still another time he testified that he was traveling about twenty-five miles an hour. Mrs. McCleary was driving north along the east side of the same highway about thirty-five miles an hour, though when the appellant reported the accident to the police office, he stated that she was going about twenty miles an hour.

Upon reaching the intersection, he "hesitated a moment" and then, holding his arm out the window on his left, "the usual sign," he turned to the left. "Q. And how fast were you going while in the intersection in making your turn? A. Between ten and twelve miles an hour," and "when I pretty near had the turn completed, this other car [respondents'] hit me in the side just a little back of the middle of the right-hand side." "The accident occurred near the southeast corner of the street intersection," just about the time he had completed his "U" turn to go north. After testifying that he made the circle in the intersection "in one movement, at the same speed," he further testified:

"Q. Didn't either increase the speed, or decrease your speed? A. No, I don't think so. Q. You said your speed was ten or twelve miles? A. Yes, sir. Q. That was while you were making this circle? A. Yes,

sir. Q. When you got about to the street car tracks did you slow up any? A. Yes. Q. And just kept right on going? A. Yes, sir. Q. Where were you when you first saw Mrs. McCleary? A. I seen her car coming when I was,—before I went into the intersection. Q. You saw her before you went into the intersection? A. Yes. Q. And where were you when you saw her coming,—how far from the intersection? A. I was right at the intersection. Q. Well, but how far back? A. I had been to the Post Office and I could see that car coming for quite a ways, coming two or three blocks back this side. Q. Back towards this court house where we are sitting? A. Yes. Q. In other words, your view from the Post Office south is almost straight, and there is nothing to obstruct your view? A. No. Q. But how far,—where were you when you actually did see her for the first time? A. Just before I went into the intersection. Q. Would you say how many feet from the intersection? A. I was right at the walk. Q. Right at the walk? A. Yes. Q. And then I suppose you kept your eye on her the rest of the time, did you not? A. Yes. Q. So you could see her approaching all of the time? A. Yes. Q. And you could judge her speed? A. Yes. Q. And you say now you think she was coming thirty-five miles per hour? A. Yes, sir. Q. And did she change her speed? A. No, sir, not that I could notice. . . . Q. Was there anything to obscure the view looking toward her? A. No, sir.''

The situation was plain. When the appellant, traveling south, turned his car to his left across the street in front of respondents' car, which was approaching from the south, it became his duty to look out for and give it the right of way.

''The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.'' *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533. *Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976.

Appellant was in no way deceived by Mrs. McCleary's conduct. He, who, according to his own testimony, had fifteen years experience driving automobiles, motor stages and trucks, saw her coming for more than a block at a uniform rate of speed. On his behalf, an argument is made upon his giving a sign for a left-hand turn upon arriving at the intersection, which Mrs. McCleary saw or must have seen. But what of it? That sign did not necessarily mean that he would not stop or slow down in or near the middle of the street to yield to her the right of way that both knew she was entitled to. Certainly, his sign of a left-hand turn at that time, just as he commenced to circle the intersection, was no plainer to Mrs. McCleary than her continuous approach for more than a block at an even rate of speed towards the appellant and within his continuous observation, was to him. "He, who was required by law to give the right of way, was expecting it to be given to him." *Bacon v. Varney,* 128 Wash. 472, 223 Pac. 322.

This case is similar to the situation in *Snyder v. Smith,* 124 Wash. 21, 213 Pac. 682, where we held that plaintiff's contributory negligence barred recovery as a matter of law. In that case, two motor vehicles were approaching a given point within an intersection, just as in the present case, and in discussing the statutory rule applicable it was said:

"The duty then was upon the appellant to look out for the respondent's car, which he did, and to give it the right of way, it being a vehicle approaching from his right, which he did not. The respondent had the right to proceed on his course on the assumption that the appellant would obey the law. The appellant saw respondent's stage, knew its rate of speed, knew that it had the right of way, and his duty was to concede that right. This he did not do and his negligence is established, for, as we have so often held, the violation

of a positive statute is itself negligence, and there can be no doubt that this negligence contributed to, and was the proximate cause of, the injury."

Judgment affirmed.

MAIN, BEALS, MILLARD, and HERMAN, JJ., concur.