[No. 24546. Department One. September 18, 1933.]

GRANT HAMILTON *et al., Respondents,* v. W. R. LESLEY *et al., Appellants.*[1]

[1]Reported in 25 P. (2d) 102.

*McCarthy & Edge* and *W. E. Dupuis,* for appellants.

*Joseph A. Albi* and *Louis A. Conyard,* for respondents.

MITCHELL, J.—This action arose out of an automobile collision at a street intersection in the city or town of Chewelah, Washington. Grant Hamilton (who will be hereinafter referred to as though he were the sole plaintiff and respondent), the driver of one car, was injured through the alleged negligence of W. R. Lesley (who will be hereinafter spoken of as though he were the sole defendant and appellant), the driver of the other car. The defendant denied negligence, and alleged contributory negligence on the part of the plaintiff as the cause of the accident. The alleged contributory negligence was denied by a reply. There was a verdict and judgment for the plaintiff. Defendant has appealed.

Assignments numbered 1 and 2 are that the court erred in denying appellant's motion for a nonsuit at the close of testimony on behalf of the plaintiff, upon the ground that the evidence showed that respondent, Grant Hamilton, was guilty of contributory negligence as a matter of law, and failed to show defendant, W. R. Lesley, to be guilty of any negligence; and also the denial of appellant's motion for a judgment notwithstanding the verdict upon the same grounds as those mentioned in the other motion.

The accident happened at 8:30 in the morning, at the intersection of Lincoln avenue, on which Hamilton was driving east, and Second avenue, on which Lesley was driving north. Both drivers were familiar with the intersection. There was no other vehicular traffic on the streets. The streets were level in the several di-

rections in and from the intersection. Lincoln avenue was forty feet wide between curbs, and Second avenue thirty feet between curbs. The intersection was the kind defined by statute as one when the driver's view is obstructed, over which a driver is prohibited from driving faster than fifteen miles an hour. Rem. Rev. Stat., § 6362-3.

Both drivers were aware of the rule that the one approaching from the right is favored. As against the motions of the appellant, there was abundant evidence, interested and disinterested, that the respondent, driving moderately, slowed down upon approaching and crossing the intersection, going not to exceed eight or ten miles, or ten or twelve miles, an hour, as different witnesses estimated, and that respondent's car was struck just as he was passing out of the intersection; in fact, he testified that the front wheels of his car had gotten beyond the intersection at the time of the collision.

More specifically, respondent's version of the affair, as shown by appellant's abstract, was as follows:.

"On the morning of October 31, I was driving on Lincoln street. I was going to see a fellow at the high school, and I intended to stop in the vicinity of the house on the corner. That is Mr. King's .house. I was traveling ten or twelve miles an hour back about 300 feet from the intersection and as I approached the intersection I was going probably eight to ten miles an hour. When I first saw Mr. Lesley's car he was down the street about 200 or 225 feet. At that time I did not realize how fast he was going. I just looked at him and looked ahead. There were some children across there and I looked to see where they went. Then I drove on into the intersection. Then I looked down again and he was about 100 feet, possibly 125 feet away from me and coming. I didn't realize he would hit me as I was so far across the intersection. I then looked ahead and looked back and here he was, about 30 feet

from me. At that time I was pretty near out of the intersection. My car was struck on the right hind wheel as I was leaving the intersection.''

A disinterested witness testified that Lesley was driving thirty to thirty-five miles an hour, and that ''Mr. Hamilton was over half-way across the intersection, you might say clear across, and then Mr. Lesley hit him.'' Lesley entered Second avenue some distance below the intersection. He admitted in his testimony that he did not check the speed of his car prior to the accident.

Following *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, the trial court, in the present case, instructed the jury as follows:

''(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

''(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.''

No exception was taken to these instructions. Under those rules and the facts in this case, as the jury had the right to find them, the determination of the questions of primary and contributory negligence were for the jury.

The remaining assignment is that the court erred in refusing to give an instruction requested by the appellant submitting to the jury the question of respondent's duty to sound his horn when he saw that danger of a collision was imminent. It is difficult to see how a refusal to give it could have in any manner prejudiced the appellant. What good would sounding the horn have done under the circumstances in this case? In addition to the width of the streets, the parking strips and sidewalks along them were broad

520

and open. Appellant testified that, from a point on his side of Lincoln avenue as he was going north seventy feet south of the intersection, he could see an object over one hundred feet to the west of the intersction, the direction from which respondent came. Of course, that length of vision to the left increased as appellant got nearer the intersection. He further testified:

"Q. You were still looking to the left when you were ten feet from the intersection? A. I looked to the left when I was about ten feet from the intersection. . . . Q. Now, then, we will take a point ten feet to the south of that. That would be the sidewalk. What is there to prevent you from looking to the west for a full four or five, six hundred yards,—anything at all? A. There is nothing. Q. No. A. No, sir."

Appellant did not attempt to stop his car because, as he testified, he did not see Hamilton in time to prevent the collision, though he admitted that, driving fifteen miles an hour (the speed limit within that intersection), he could have stopped within "two feet," an estimate of course.

The principle applicable here is stated in *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784, as follows:

"A number of times this court has held that, when a person testifies that he looked and did not see an object, which plainly he could have seen, that he will not be heard to say that he looked and did not see. In other words, the situation is the same as though he had looked and seen the object. In principle this case cannot be distinguished from *Helliesen v. Seattle Electric Co.,* 56 Wash. 278, 105 Pac. 458; *Fluhart v. Seattle Electric Co.,* 65 Wash. 291, 118 Pac. 51; *McEvilla v. Puget Sound Tr., L. & P. Co.,* 95 Wash. 657, 164 Pac. 193; *Herrett v. Puget Sound Tr., L. & P. Co.,* 103 Wash. 101, 173 Pac. 1024."

The purpose of sounding the horn would be to give warning of the approach of a vehicle in time to avoid

accidents, and since, in the present case, the situation of the appellant was the same as though he had looked and seen the object, he cannot be heard to complain of the refusal of the court to give the requested instruction.

Affirmed.

BEALS, C. J., HOLCOMB, TOLMAN, and MILLARD, JJ., concur.