[No. 27520.   Department Two.   August 18, 1939.]

HARRY S. BOWEN *et al., Appellants,* v. HARRY ODLAND *et al., Respondents.*[1]

*Kellogg, Walters & Pedersen,* for appellants.

*Skeel, McKelvy, Henke, Evenson & Uhlmann,* for respondents.

[1]Reported in 93 P. (2d) 366.

BEALS, J.—Plaintiffs, Harry S. and Bessie Bowen, sued Henry and Alice Odland for damages on account of injuries suffered by Mrs. Bowen as the result of a collision between plaintiffs' automobile, driven by Mrs. Bowen, and defendants' automobile, driven by Mrs. Odland. In their complaint, plaintiffs demanded judgment for fifty thousand dollars on account of Mrs. Bowen's injuries, and over $2,200 on account of damages to their automobile and other incidental items. Defendants cross-complained for damages to their automobile in the sum of $225.

The action was tried to a jury, which returned a verdict in favor of the defendants, but without awarding them any damages. From a judgment entered upon the verdict, plaintiffs have appealed, assigning error upon the giving of certain instructions; upon the refusal of the trial court to grant their motion for a new trial; and upon the entry of judgment upon the verdict.

The accident occurred September 22, 1937, at the intersection of Harvard avenue north and east Prospect street, in the city of Seattle. Mrs. Bowen was driving north on Harvard avenue north, and Mrs. Odland was driving east on east Prospect street. The Bowen car was on Mrs. Odland's right.

As the result of the accident, Mrs. Bowen was very seriously injured, and at the trial testified that she had no recollection whatever of the accident. Mrs. Odland testified that, about three o'clock in the afternoon, the pavement being dry, she was driving uphill on east Prospect street, approaching the intersection with Harvard avenue north, the car being in intermediate gear; that she approached the intersection at a speed not exceeding fifteen miles per hour; that she saw the Bowen car approaching, going very fast, and she tried to stop, but was unable to avoid striking the other car. She testified that, in her best judgment,

the other car was fifty to one hundred feet away when she first saw it, but it is evident from her testimony that her estimate of this distance was little more than a guess.

No witness testified concerning the relative position of the cars in or near the intersection prior to the collision. Several witnesses heard the crash; one witness saw the Bowen car immediately thereafter as it proceeded across the street and overturned; and several witnesses testified as to what occurred immediately after the accident. Several witnesses testified that, after the accident, Mrs. Odland said that she did not see the Bowen car prior to the impact. It appears that the Bowen car was struck on the left side, back of the center.

Appellants assign error upon two paragraphs of instruction No. 11, as given by the trial court. By instruction No. 10, the jury were told that it was the duty of the operator of any vehicle, on approaching street intersections, to look out for and give right of way to vehicles on the right simultaneously approaching a given point within the intersection, whether such vehicle first entered the intersection or not. Appellants argued to the trial court that this instruction covered the situation completely and adequately.

Instruction No. 11, which embodies the principles of law approved by this court in the case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, was divided into four numbered paragraphs. By the first, the jury were told that all rights of way are relative, and that the duty to avoid collisions at street intersections rests upon both drivers. By the second paragraph, the jury were told that the primary duty of avoiding such collisions rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times. The

third and fourth paragraphs of the instruction, of which appellants complain, read as follows:

"(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or not the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

Appellants argue that these portions of the instruction were not within the issues of the case, could readily have confused the jury, and were highly prejudicial to appellants.

■■ In the case of *Martin v. Hadenfeldt, supra,* it appeared that the disfavored driver, on approaching the intersection, reduced his speed to three or four miles an hour, and looked to his right down the intersecting street. He saw two automobiles approaching at a considerable distance. Believing that he had ample time to cross the street ahead of the cars which he saw, and which enjoyed the right of way, he proceeded to cross the street, but was struck by one of the approaching cars. There was evidence to the effect that the car on the right was exceeding the speed limit, and the jury might have found that it continued at an excessive rate of speed up to the instant of the collision. This court held that instructions similar to instruction No. 11 given by the trial court in the case at bar, embodied the principles of law applicable to the evidence before the jury. In the case cited, the jury might have found that the car which enjoyed the right of way was as far from the intersection as 190

feet when the disfavored driver started to cross, and that that car was moving at a speed far in excess of the lawful rate, and that its speed was not diminished prior to the collision.

In the case at bar, Mrs. Odland testified, in answer to a question as to what happened:

"I just saw it [the Bowen car], and then in a flash it was on me, it was coming very fast, and it was just all over, and it went on across the street and hit the post, or whatever it did hit, and continued on and turned over."

She testified that, when she first saw the Bowen car, she tried to stop. Asked as to the speed of the Bowen car, she answered: "I would have to guess. I know it was going fast." Immediately her counsel said to the witness: "The question is, could you have any judgment on it? Do you have a judgment as to what speed it was traveling?" and she answered: "Around forty miles, is that what you mean? I don't think I understood you, Mr. McKelvy." Answering another question by her counsel as to where the Bowen car was when she first saw it, she said: "To the best of my judgment it was back about fifty to one hundred feet."

The view across the southwest corner of the intersection was somewhat obstructed by brush, and the Odland car, in approaching the intersection, was proceeding up a thirteen per cent grade, while Harvard avenue was practically level. The situation was manifestly one which required the exercise of care on the part of both drivers, and particularly upon the one occupying the disfavored position.

In the case of *Martin v. Hadenfeldt, supra,* it clearly appeared that the disfavored driver saw the car approaching from his right at a considerable distance, and had an opportunity to, and did, estimate the situation and determine whether or not he could cross in

safety. It seems probable that he could have done so, had the approaching car not been proceeding at an excessive rate of speed. The fourth paragraph of instruction No. 11, above quoted, presupposes a state of facts at least approximately similar to the situation presented in the *Hadenfeldt* case. In the case at bar, the only testimony concerning the situation just prior to the accident was that given by Mrs. Odland, who said that she just saw the Bowen car, "and then in a flash it was on me." She tried to stop her car, but did not succeed in doing so in time to avoid the collision.

Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846] (Laws of 1937, chapter 189, p. 899, § 88), reads as follows:

"It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enter and reach the intersection or not: *Provided,* This section shall not apply to operators on arterial public highways."

This is the basic law governing vehicles at street intersections, and it was recognized by this court in the *Hadenfeldt* case. Paragraph 4 of instruction No. 11 recognizes a proper exception to or limitation on the basic rule, but an instruction stating this exception should only be given in cases where the facts warrant it. The exception presupposes a situation in which the disfavored driver has an opportunity to observe the situation and is misled or deceived by the actions of the favored driver. From Mrs. Odland's evidence, it is impossible to conclude that she was in any manner deceived. As soon as she saw the Bowen car, she knew that she could not safely attempt to cross in front of it, as she testified that she attempted to stop.

The rule of the *Hadenfeldt* case should not be extended to any such situation as is presented in the case at bar. The instruction referred to was outside of the issues in the case, and was confusing, in that it introduced a rule of law inapplicable to the facts, but which the jury may well have attempted to apply to the case before them.

In the case at bar, there is no evidence upon which to base the theory that Mrs. Odland was in any manner deceived by what she saw. At no time after she saw the Bowen car was she warranted in going forward upon the assumption that she had the right to proceed. From Mrs. Odland's testimony, it appears that, when she first saw the Bowen car, her reaction was to attempt to stop, and this she attempted to do.

In the case of *Roed v. Washington Laundry Co.,* 160 Wash. 166, 294 Pac. 1023, this court held that, even though the disfavored driver looked to the right before entering an intersection, the case fell within the second principle referred to in the *Hadenfeldt* case, and without the fourth, and that the trial court properly directed a verdict in favor of the defendant, the plaintiff having been guilty of such negligence as precluded any recovery on his part.

In the case of *Palmer Inv. Corp. v. Seattle,* 161 Wash. 460, 297 Pac. 783, the court, speaking through Judge Tolman, reversed a judgment entered upon the verdict of a jury in favor of the plaintiff, holding that the court had improperly instructed the jury and permitted the jury to place upon the operator of the defendant's car the whole duty of avoiding the collision. The *Hadenfeldt* case was referred to and followed.

In *Martin v. Westinghouse Elec. & Mfg. Co.,* 162 Wash. 150, 297 Pac. 1098, this court affirmed a judgment in favor of the plaintiff, holding that, under the facts, paragraph 4 of the *Hadenfeldt* rule properly ap-

plied to the situation. It appeared that the disfavored driver, on approaching the intersection, looked to his right and saw a car approaching, but thinking that he had a reasonable margin of safety, attempted to cross ahead of the car. It was held that a question of fact for the jury was presented.

In the case of *Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976, this court reversed a judgment entered upon the verdict of a jury in favor of the plaintiff, holding that the driver of the disfavored car had violated two rules of the road, and that, as matter of law, it should be held that his negligence substantially contributed to the accident. The driver of the car on the left testified that, on approaching the intersection, he looked to his right and saw nothing, but after a glance to his left, he continued across the street, and that, just as he was entering the intersection, he saw a car coming from his right; that, when he saw this car, he applied his brakes, and attempted to stop. Asked whether or not he was struck before he stopped, he answered: "I couldn't say as to that, it was—all happened so quick." The court referred to the fourth of the *Hadenfeldt* rules and held that the driver of the disfavored car had not met the burden thereby placed upon him, and that, as matter of law, it should so be held.

In the case of *Vance v. McCleary,* 168 Wash. 296, 11 P. (2d) 823, the judgment of the superior court in favor of the defendants, entered notwithstanding the verdict of the jury in plaintiff's favor, was affirmed. This court, citing the second paragraph of the *Hadenfeldt* rules, to the effect that the primary duty of avoiding such accidents rests upon the driver on the left, held that the plaintiff was not deceived by the defendants' course of driving.

In the case of *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60, this court affirmed a judgment of the su-

perior court dismissing an action on defendant's motion at the close of plaintiff's case, which involved an automobile collision. The plaintiff's car was traveling north, and the defendant south, on the same street. Plaintiff attempted to make a left-hand turn into an intersecting street. Each car was traveling upgrade, the apex of the hill being at the street intersection above referred to. The plaintiff testified that he entered the intersection and turned at a lawful rate of speed, after giving the proper signal for a left-hand turn. Because of the hill, neither driver could see the other car for any considerable distance back of the intersecting street. Plaintiff turned to his left, placing the other car on his right, and testified that he saw the defendant's car fifty or sixty feet back from the corner, and that the next thing he knew, the defendant's car struck plaintiff's car on the side. Plaintiff testified that, if the defendant's car had not been proceeding at a rate of speed greater than twenty-five miles an hour, and had entered the intersection at no more than fifteen miles per hour, plaintiff would have had time to clear the intersection before the collision. Plaintiff introduced no evidence whatever concerning the speed of the defendant's car, nor that he knew at what speed defendant's car was traveling. This court called particular attention to the fact that it did not appear from plaintiff's testimony that he was deceived by the operations of defendant's car to any degree whatsoever. It was held that, since neither car was on an arterial highway, the case was governed by the rule in the *Hadenfeldt* case, and that since the plaintiff

". . . produced no evidence to indicate that respondent [defendant] 'so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver' in his (appellant's) position, there was no question to go to the jury."

The case is important here, as this court, in its opinion, stressed the fact that the plaintiff was nowise deceived by the acts of the defendant.

In the case of *Hoenig v. Kohl*, 182 Wash. 245, 46 P. (2d) 728, we affirmed a judgment of the superior court entered in favor of the defendant notwithstanding the verdict of the jury in favor of the plaintiff, in an action for personal injuries sustained in an automobile collision. The superior court had ruled in defendant's favor, upon the ground that plaintiff's negligence had materially contributed to the accident. Plaintiff was driving west, and defendant's car was proceeding south, both cars approaching the intersection where the accident occurred. The defendant's car had the right of way; neither street was an arterial highway. The plaintiff testified that, because of the injuries which he received in the accident, his memory had been affected, and he had no recollection of the accident, or of the events which immediately preceded it. A guest who was riding with him testified concerning the collision. From the testimony of this witness, it appeared that plaintiff's car approached the intersection at a lawful rate of speed; that plaintiff looked to his right, and at that time the defendant's car was not more than half a block distant; that both cars continued through the intersection, and collided therein. This court, holding that, under the evidence, it should be held that the plaintiff was contributorily negligent, said:

"Having in mind the rule laid down in *Martin v. Hadenfeldt*, 157 Wash. 563, 289 Pac. 533, and the cases which follow it, there is here no room for reasonable minds to differ. If the appellant looked, as it is said he did, then he saw, or was charged with the duty of seeing, the approaching car, and was bound in law to know that its rights in the intersection were superior to his own. Being the disfavored driver, it was incum-

bent upon him to yield the right of way unless the situation was such as to clearly indicate that he could cross with a fair margin of safety. In the light of the quoted testimony, no reasonable mind can believe that the appellant exercised that care which the law required of him. The burden was upon the appellant to produce evidence of facts which would justify him in proceeding into the intersection. This, he did not do, and upon the uncontradicted testimony, reasonable minds must agree that the appellant was guilty of contributory negligence in driving into the intersection under the conditions shown."

Two cases cited by respondents in connection with this phase of the case at bar, are not in point.

We hold that that portion of instruction No. 11 stating the rule embodied in the fourth paragraph of the principles laid down in the *Hadenfeldt* case, to which appellants excepted, had no application to the facts as shown by the testimony in the case at bar, and should not have been given. Under the statute, the primary duty of avoiding a collision rests upon the driver on the left. The rule laid down by the fourth paragraph of the instruction above quoted is an exception to the general rule and should be applied only in special cases, when rendered appropriate by the evidence. The principle embodied in this paragraph applies in cases in which testimony has been introduced to the effect that the disfavored driver had an opportunity to observe and estimate the situation and actually did so, and further was deceived by some conduct of the other driver which led the disfavored driver to believe that he could proceed within a reasonable margin of safety, and that he was therefore warranted in going forward.

We have considered only the question of the propriety of the instruction referred to in view of the evidence. The record discloses a proper case for submission to a jury.

The views hereinabove expressed render it unnecessary to discuss appellants' other assignments of error.

Because of error in instructing the jury, as above stated, the judgment appealed from is reversed, with instructions to the trial court to grant a new trial.

BLAKE, C. J., MAIN, SIMPSON, and GERAGHTY, JJ., concur.