[No. 28110. Department One. February 10, 1941.]

A. S. FETTERMAN, *Respondent*, v. OSCAR LEVITCH, *Appellant*.[1]

[1]Reported in 109 P. (2d) 1064.

*Witherspoon, Witherspoon & Kelley,* for appellant.

*James A. Brown* and *Robert M. Brown,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover for personal injuries and property damage resulting from a collision between two automobiles. The action was tried before the court and a jury. At the conclusion of plaintiff's evidence, defendant challenged the sufficiency thereof and moved for a nonsuit, and, at the conclusion of all the evidence, he again interposed a challenge thereto, and at that time moved for a directed verdict. Both motions were denied. The cause was submitted to the jury, and a verdict was returned in favor of plaintiff. A motion by defendant for judgment notwithstanding the verdict was denied, and, thereafter, judgment in the amount of the verdict was entered for plaintiff. Defendant appealed.

The collision occurred at the intersection of Howard street and Twenty-fourth avenue in the city of Spokane, shortly after noon, on a bright, clear day in April. Howard street runs north and south, Twenty-fourth avenue runs east and west, and the two streets intersect at a right angle. South of Twenty-fourth avenue, Howard street is 41 feet wide; north of Twenty-fourth avenue, it is 30 feet wide. Twenty-fourth avenue, west of Howard street, is also 41 feet wide, while east of Howard street it is 24½ feet wide. Both streets are paved, and neither of them is an arterial highway.

Respondent was fifty-three years of age at the time of the accident, and, in the conduct of his business, that of manufacturers' jobber, had driven automobiles regu-

larly for many years. His testimony as to the events immediately preceding the collision was as follows: Shortly before the occurrence of the accident, he was driving his Buick sedan in an easterly direction on Twenty-fourth avenue at a speed of approximately twenty-five miles per hour. Approaching Howard street, he slowed down to eighteen or twenty miles per hour. At a point twenty-five or thirty feet west of the intersection, he looked both to his right and to his left. No traffic was approaching from his left. To the right, he at that point had an unobstructed view of Howard street for a distance of over three hundred feet, to and beyond Twenty-fifth avenue, which is the next street to the south. Looking to the right, he at that time saw an approaching automobile about forty or fifty feet north of Twenty-fifth avenue, or about two hundred sixty feet away from the intersection which he was then approaching. The other vehicle was plainly visible, and was traveling at a speed of approximately twenty-five miles per hour. There was nothing in the action of the other driver to indicate that he would accelerate his speed. Upon those observations, respondent concluded that he himself had plenty of time to get well over the intersection before the arrival there of the other car. He therefore did not stop at the intersection, but proceeded to cross it. We quote directly his testimony relative to his entrance into the intersection, and as to what transpired thereafter:

"A. I figured I had plenty of time to get well over the intersection because he was approximately 260 feet back and I proceeded into the intersection. Q. At about what rate of speed? A. At about eighteen or twenty miles an hour. Q. Yes, go ahead. A. (continuing)—when I entered the intersection. Q. And what happened? A. When I got about half way across the intersection there was some small children. Could I have that rule, that pointer? Q. Yes. A.

There was some small children stepped out in front of me, right here (indicating) off of this sidewalk. Q. Which way were the small children going? A. North on Twenty-fourth. Q. Yes? A. I was right in here (indicating) and I was afraid I was going to hit them, so I put my brakes on, then I got up a little further right down south, because I didn't want to hit those children. I was practically stopped then, maybe five or six miles an hour. Q. Where? A. Right about here (indicating) close to this curb. Q. You mean your front bumper was there? A. Yes, close to this curb (indicating). I glanced out to the right and this other car was coming into me broadside with all four wheels slanted."

Two disinterested witnesses corroborated respondent's testimony to the effect that appellant's automobile entered the intersection at a speed of thirty-five or forty miles per hour, with its brakes screeching.

The force of the impact was such that respondent's automobile was shoved violently across Twenty-fourth avenue, over the curb at the northeast corner, and came to rest on its side, lying on a portion of the parking strip. Respondent was severely injured, his clothes were ruined, his glasses were lost, and his car was damaged extensively.

Appellant's car, a Pontiac, was being driven by an employee at the time of the collision. The employee gave the following version of the accident: Traveling north on Howard street, he crossed Twenty-fifth avenue at a speed of approximately ten miles per hour. About forty or fifty feet north of that intersection, he increased his speed to approximately twenty-five miles per hour, and at no time was traveling at a speed greater than that. When a little over eighty feet from the intersection of Howard street and Twenty-fourth avenue, he observed respondent's car approaching from the west and at about an equal distance from the intersection. Both cars were traveling at about the same

rate of speed. After noticing the other car, the driver of appellant's automobile continued "aways further," and then stepped on and off his brakes several times, at the same time keeping his eye on the other car. He did not see any children either at the northeast corner of the intersection or crossing Twenty-fourth avenue. About twenty feet from the intersection, he stepped on the brakes for the last time, but did not apply them to the full extent until he was even closer to the intersection. He was unable to state within what distance, while traveling at the rate of twenty-five miles per hour, he could bring the Pontiac car to a stop on a dry street such as existed at the intersection.

Although appellant assigns a considerable number of errors alleged to have been committed by the trial court, he makes but one contention, namely, that respondent was guilty of contributory negligence as a matter of law (1) in failing to look to his right a second time, and (2) in failing to yield the right of way to appellant's car. The two grounds are argued together, and we shall likewise consider them conjunctively.

The basic rule underlying both grounds of the contention is prescribed by Rem. Rev. Stat., Vol. 7A, § 6360-88 [P. C. § 2696-846], which provides:

"It shall be the duty of every operator of any vehicle on approaching public highway intersections to look out for and give right of way to vehicles on their right, simultaneously approaching a given point within the intersection, and whether such vehicle first enter and reach the intersection or not: *Provided,* This section shall not apply to operators on arterial public highways."

Construing that section (formerly Remington's 1927 Sup., § 6362-41, subd. 14) this court, in the well-known case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533, laid down a rule, or set of rules, to be applied to "intersection cases." The court there said:

" . . . an instruction upon the subject should embody all of the following elements:

"(1)   All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

"(2)   The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

"(3)   If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

"(4)   The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed."

The principal ground upon which appellant bases his contention is the one relative to respondent's failure to look to his right a second time. Respondent himself testified that he was twenty-five or thirty feet from the intersection when he looked to the right, and that he did not look again in that direction before, or immediately on, entering the intersection. Appellant's position seems to be that it was the duty of respondent to look to his right at the westerly *curb line* of the intersection, and that his failure to look at that point constituted negligence as a matter of law.

It will be noted that Rem. Rev. Stat., Vol. 7A, § 6360-88, quoted above, does not require the driver on the left to look to his right on *entering* an intersection, but simply requires him, on *approaching* public highway intersections, to look out for and give right of way to vehicles on his right simultaneously approaching a given point within the intersection.

Although, literally, the curb lines, extended, mark the boundaries of an intersection, and although, from a literal standpoint, an automobile *enters* an intersection when it crosses the curb line, this court has never said, dogmatically, that "one entering an intersection" must look to his right immediately *at the curb line;* nor has it ever attempted to prescribe a rule fixing the exact number of feet from the curb line within which the driver on the left must look. In the very nature of things, no such rule can, or should, be promulgated, for the simple reason that conditions differ with every intersection and with every instance in which a driver endeavors to cross an intersection.

What this court has frequently declared, and more often indicated, the correct rule to be, and the rule which we again repeat, and now adhere to, is that the *primary,* not the absolute, duty of avoiding an accident at an intersection rests upon the driver on the left, which duty *he must perform with reasonable regard to the maintenance of a fair margin of safety* at all times. *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533; *Martin v. Westinghouse Elec. & Mfg. Co.,* 162 Wash. 150, 297 Pac. 1098; *Teshirogi v. Belanger,* 167 Wash. 278, 9 P. (2d) 66; *Sather v. Blodgett,* 169 Wash. 25, 13 P. (2d) 60; *Hamilton v. Lesley,* 174 Wash. 516, 25 P. (2d) 102; *Huber v. Hemrich Brewing Co.,* 188 Wash. 235, 62 P. (2d) 451; *Perren v. Press,* 196 Wash. 14, 81 P. (2d) 867; *Gibson v. Spokane United Railways,* 197 Wash. 58, 84 P. (2d) 349.

In the performance of the duty resting upon him, it is obviously essential that the disfavored driver look to his right from a point *at which he can see and reasonably decide* whether he can proceed across the intersection with a fair margin of safety. The maximum distance from the curb line at which the required observation may be made necessarily depends upon the

surrounding conditions and circumstances. In the case of a completely obstructed corner, one, for instance, where a building is constructed along the two property lines, such observation can, obviously, be made only at, or practically at, the curb line. In the case of a wholly unobstructed corner, as, for instance, one where there is an open, vacant lot, level with the street, and with nothing upon its surface, the observation, manifestly, can be made at an earlier point. Between these two extremes, the required points of observation must necessarily vary. In each instance, however, the rule is the same, namely, that the observation must be made from such point as will enable the driver to see and reasonably decide whether he has, and can maintain, a fair margin of safety.

Whether or not the disfavored driver has performed the duty incumbent upon him, is ordinarily a question for the jury, and cannot be decided by the court as a question of law, unless the circumstances are such that it can be said that reasonable minds could not arrive at different conclusions thereon.

Upon the point under consideration, appellant relies principally upon two of our former decisions: *Fisher v. Hemrich Brewing Co.,* 183 Wash. 489, 49 P. (2d) 1, 53 P. (2d) 1198, and *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371. In the *Fisher* case, *supra,* the evidence disclosed that as the driver on the left, the appellant, approached the intersection, his view of the intersecting street on the right was somewhat obstructed by a house and some shrubbery and a four-foot terrace in the yard; that, as he passed the house, he decreased his speed and could then see about one hundred and ten feet to his right; that, when he first arrived at a point within sixty or seventy feet from the intersection, he could look down the cross street a distance of about seventy feet; that his last look to the right was from

a point about forty feet from the intersection; that from that point he could not see the entire length of the block to his right, because his car was small and low; and that the other car, which was approaching from the right and traveling at a speed of not less than thirty-five miles per hour, was within sixty feet of the intersection when the appellant entered it, but at no time prior to the impact was seen by him. The facts in that case are not at all similar to those involved in the instant case, and, consequently, that decision is not controlling here.

The *Delsman* case, *supra,* presented a situation similar to that in the *Fisher* case. The disfavored driver looked from a point where his view was obstructed, and therefore did not see the vehicle approaching on his right. From the evidence offered by the disfavored driver himself, it appeared that, as he crossed the east curb line of the intersection, the other vehicle, traveling at a speed of from thirty-eight to forty-five miles per hour, was approximately forty-eight to fifty feet north of the north curb line of the intersection, and was plainly to be seen, yet he did not see it. In holding that the disfavored driver's failure to look again upon entering the intersection constituted negligence as a matter of law, this court said:

"The observation which a driver in appellant's position is required to make is observation from a point at which he can see, and decide when he can proceed within a reasonable margin of safety, not from a point back from the intersecting street, from which his view is seriously obstructed."

The *Delsman* case, thus, merely states the rule which we have hereinbefore previously announced. The facts there, however, were quite different from those in the case at bar, and for that reason the holding in that case is not controlling here.

Additional cases, cited by appellant in support of his position, are either cases in which the disfavored driver, instead of having a fair margin of safety, in effect contested the right of way (*Roed v. Washington Laundry Co.,* 160 Wash. 166, 294 Pac. 1023; *Hoenig v. Kohl,* 182 Wash. 245, 46 P. (2d) 728; *Nieunau v. Kelsey,* 185 Wash. 454, 55 P. (2d) 1063; *Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175), or are cases wherein the disfavored driver did not see an oncoming vehicle which was plainly within his view (*Rhodes v. Johnson,* 163 Wash. 54, 299 Pac. 976; *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411; *Department of Labor & Industries v. Hickle,* 1 Wn. (2d) 475, 96 P. (2d) 577).

Whether or not respondent, in the case at bar, acted reasonably in relying upon an unobstructed observation made twenty-five or thirty feet from the intersection was, at least, under all the accompanying circumstances, a question upon which reasonable minds might differ. The question, then, of whether or not respondent complied with his initial duty, as prescribed by the statute, and as enjoined by our decisions above referred to, was one for the trier of the fact. The jury found that respondent complied with that duty.

That it was likewise for the jury to say whether or not respondent, after his initial look to the right, acted reasonably in failing to look in that direction again, or continuously, while crossing the intersection, has been definitely settled in this jurisdiction. *Olsen v. Peerless Laundry,* 111 Wash. 660, 191 Pac. 756; *Huber v. Hemrich Brewing Co.,* 188 Wash. 235, 62 P. (2d) 451; *Lindberg v. Steele,* 5 Wn. (2d) 54, 104 P. (2d) 940.

The second ground of appellant's contention, it will be recalled, was respondent's failure to yield the right of way. In this connection, the presence of

the children in the intersection becomes a prominent factor. Appellant contends strenuously that the evidence shows that respondent saw the children from a point forty feet west of, and *before* he entered, the intersection; that he then slowed down and brought his car to a stop at a point three feet west of the *westerly* curb, and then proceeded forward into the intersection and beyond the center line, into a zone of danger, knowing that he might be called upon to bring his car to another stop directly in the path of appellant's car. Relying upon that version of the facts, appellant insists that respondent must be held to have been guilty of contributory negligence as a matter of law in failing to yield the right of way to the vehicle on his right.

We have read the record carefully, and have satisfied ourselves that it does not justify appellant's conclusions. It is true that, at one point in his testimony, respondent stated that he had stopped three feet from the westerly curb, but it is manifest from his entire testimony that he mis-spoke himself at that point, and that he actually had reference to the *easterly* curb. Time and again, respondent made it clear in his testimony that it was near the easterly curb, and not near the westerly curb, that he had stopped.

His testimony was also specifically to the effect that he first saw the children when he was at the center line of the intersection, at which time the children stepped off the curb into the street directly in front of him, and that to avoid striking them he slowed down to a speed of approximately six miles per hour, and came to a stop about three feet from the easterly curb. It was then, of course, too late for him to do anything to avoid the collision. Appellant's car crashed into him broadside almost instantly.

■ Furthermore, even if it be conceded that the record offers support for appellant's position, the situation, at best, would simply be one involving a conflict in the evidence, and the issue would have been one of fact for the jury.

■ And, in addition, since appellant is here contending for a judgment notwithstanding the verdict, we must not only accept as true all competent evidence in favor of respondent, but must also give him the benefit of every favorable inference which reasonably can be drawn from such evidence. *Pyle v. Wilbert*, 2 Wn. (2d) 429, 98 P. (2d) 664; *Wiggins v. North Coast Transportation Co.*, 2 Wn. (2d) 446, 98 P. (2d) 675; *Pierce v. Pacific Mutual Life Ins. Co.*, *ante* p. 151, 109 P. (2d) 322.

We conclude that whether or not respondent acted reasonably in proceeding beyond the center line of the intersection and stopping at the point near the easterly curb, was, under the circumstances, a question for the jury. We are unable to say that his conduct amounted to contributory negligence as a matter of law.

The judgment is affirmed.

ROBINSON, C. J., MAIN, MILLARD, and BLAKE, JJ., concur.