[No. 30053.   Department Two.   May 15, 1947.]

ROBERT PLENDERLIETH *et al., Appellants,* v. WILLIAM W. McGUIRE *et al., Respondents.*[1]

[1]Reported in 180 P. (2d) 808.

*Houghton, Cluck & Coughlin,* for appellants.

*Ballinger, Hutson & Truscott* and *Frank J. Eberharter,* for respondents.

HILL, J.—This is a suit by the appellants, a disfavored driver and his wife, to recover damages for injuries sustained as a result of an intersection collision. We have prepared a diagram from one of the exhibits, and make it a part of this opinion so that the situation will be more readily understandable.

The record is made somewhat confusing by the fact that the arterial street, which runs in a northwesterly and southeasterly direction from the intersection involved in this proceeding, is North Green Lake way to the west of Densmore avenue and is East Green Lake way to the east of Densmore avenue. We will refer to it hereafter as the arterial. The course of East Green Lake way is an arc around the north side of Green Lake park which, extended west of Densmore avenue, is West Green Lake way.

Appellants had been proceeding in a northeasterly direction along West Green Lake way and intended to make a left turn and go north on Densmore. There is no stop

sign on West Green Lake way to control the traffic entering the arterial.

Appellant driver signaled his intention of making a left turn and, when he reached the position indicated as P3 on the diagram, he looked to his right for the first time and saw the car of respondents a block away, at P4. He estimated respondents' speed at thirty to thirty-five miles an hour, and he was at that time proceeding forward across the arterial at fifteen to eighteen miles an hour. He "figured there was just ample room to pass" and increased his speed, as he went forward, to not more than twenty-three miles an hour. He testified that he had cleared the intersection except for the rear end of his car, about three feet of which was still south of the northerly curb line, extended, of the arterial when it was hit by respondents' car.

There was a verdict for the respondents, the favored driver and his wife, without damages. From a judgment entered on that verdict, this appeal is prosecuted.

The questions raised by the appellants relate to the refusal of the trial court to give certain requested instructions. The trial court instructed the jury that:

" 'It shall be the duty of any operator of any vehicle upon entering an intersection and having signalled his intention as required by law to turn such vehicle to the left to look out for and give right of way to vehicles approaching in the opposite direction and thereby placed on his right, simultaneously approaching a given point within the intersection, whether such vehicle first enter and reach the intersection or not. . . .'

"In construing this law, you are further instructed:

" '(1) All rights of way are relative, and the duty to avoid accidents or collisions at street intersections rests upon both drivers.

" '(2) The primary duty of avoiding such accidents rests upon the driver on the left, which duty he must perform with reasonable regard to the maintenance of a fair margin of safety at all times.

" '(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute.' "

It will be noted that in this instruction the trial court gave the first three paragraphs of the rule laid down in the case of *Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533. Appellants insist that there should have been included in the instruction the fourth paragraph of the rule, which, together with the third paragraph, reads as follows:

" '(3) If two cars collide within the intersection, then they were simultaneously approaching a given point within the intersection, within the meaning of the statute, unless—

" '(4) The driver on the left assumes and meets the burden of producing evidence which will carry to the jury the question of fact as to whether or no the favored driver on the right so wrongfully, negligently, or unlawfully operated his car as would deceive a reasonably prudent driver on the left and warrant him in going forward upon the assumption that he had the right to proceed.' "

The trial court took the position that there was no evidence of any deception by the favored driver, and that mere self-deception on the part of the disfavored driver is not sufficient to bring him within the exception to the third paragraph of the rule in the *Hadenfeldt* case, which is set forth in the fourth paragraph.

In *Jamieson v. Taylor,* 1 Wn. (2d) 217, 95 P. (2d) 791, we pointed out that the favored driver did nothing which confused or deceived the disfavored driver, and at p. 227 we said:

"We have clearly demonstrated in two recent decisions, *Bowen v. Odland,* 200 Wash. 257, 93 P. (2d) 366, and *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371, that application of the exception or limitation [paragraph (4)] of the *Hadenfeldt* rule must be confined to fact situations which closely resemble those which obtained in the *Hadenfeldt* case. In *Bowen v. Odland, supra,* this court passed upon an instruction which embodied all of the conditions mentioned in the *Hadenfeldt* case and stated:

" 'Under the statute, the primary duty of avoiding a collision rests upon the driver on the left. The rule laid down by the fourth paragraph of the instruction above quoted is an exception to the general rule and should be applied only in special cases, when rendered appropriate by the evidence. The principle embodied in this paragraph applies in cases in which testimony has been introduced to the effect that

the disfavored driver had an opportunity to observe and estimate the situation and actually did so, and further was deceived by some conduct of the other driver which led the disfavored driver to believe that he could proceed within a reasonable margin of safety, and that he was therefore warranted in going forward.' "

A review of our right-of-way cases in which disfavored drivers have sought recovery demonstrates the wisdom of the observation of Judge Beals in *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371, wherein he said that the ingrafting of exceptions upon the sound and wholesome rule of the road that the primary duty of avoiding intersection accidents rests upon the driver on the left

". . . would tend only to confusion and lead drivers occupying the disfavored position under the statute to think that they might somehow escape the burden imposed upon them by law and throw the blame for avoidable accidents upon another."

From a period in which an instruction setting forth the fourth paragraph of the rule in the *Hadenfeldt* case was given in almost every intersection case, and in which in some instances we even exculpated the disfavored driver from negligence if he had almost cleared the intersection and there was room for the favored driver to pass behind him, there has come a gradual but marked limitation on the circumstances under which such an instruction is given. The trial courts now want to know how and why and wherein a disfavored driver was deceived, and just what the favored driver did that constituted deceit. As was said in *Calvert v. Seattle,* 23 Wn. (2d) 817, 162 P. (2d) 441,

"It is clear that the court, in failing to give the instruction concerning deception, followed the cases of *Bowen v. Odland,* 200 Wash. 257, 93 P. (2d) 366; *Delsman v. Bertotti,* 200 Wash. 380, 93 P. (2d) 371; *Jamieson v. Taylor,* 1 Wn. (2d) 217, 95 P. (2d) 791; *Hauswirth v. Pom-Arleau,* 11 Wn. 2d) 354, 119 P. (2d) 674; *Cramer v. Bock,* 21 Wn. (2d) 13, 149 P. (2d) 525. These cases held that it was improper to give the instruction relative to deceit in cases where there was no evidence upon which to base the theory that the disfavored driver was deceived by what he saw just prior to the collision."

In *Martin v. Hadenfeldt, supra,* decided in 1930, emphasis was placed on the necessity of keeping traffic moving. The court there said:

"The *necessity for the constant moving of traffic* and that the intersection be not blocked in either direction requires the driver on the left to decide almost instantly whether to proceed or stop. If, acting as a reasonably prudent man, he makes such observations as he can, and there is nothing to warn him that the car approaching on the right is so far exceeding the speed limit as to endanger his progress, he must necessarily proceed *in order to facilitate traffic.*" (Italics ours.)

But in *Delsman v. Bertotti, supra,* decided nine years later, the emphasis was on safety, and in that case the court said:

"*Speed is of much less importance than safety, and, under modern traffic conditions, safety, to a great extent, depends upon careful and prudent observation both of natural physical conditions and of other vehicles using the highway, as well as of pedestrians.* We are in accord with the rules laid down in the *Hadenfeldt* case, but are not inclined to extend the exception therein provided for." (Italics ours.)

During the period of World War II, the number of traffic fatalities in the United States exceeded the number of Americans killed in action. Although *Delsman v. Bertotti, supra,* was decided in 1939, the mounting traffic toll was unquestionably one of the factors behind the change of emphasis to which reference has been made.

We come now to a consideration of the appellants' contention in the instant case. They state, as set forth on pp. 19 and 20 of their reply brief, that:

"The 'deceit' of the favored driver may, and in the typical case does, consist of nothing more than excessive speed on the part of the favored driver, together with the *absence* of anything which would warn a reasonably prudent driver that the car on the right is out of control or is so far exceeding the speed limit as to be actually within striking distance.

"The 'deceiving' may consist in driving at an excessive speed which, because of the head-on approach, or for some

other reason, does not appear to be so excessive as to endanger the driver on the left."

Appellants rely on five cases, three of which (*Hamilton v. Lesley,* 174 Wash. 516, 25 P. (2d) 102; *Swanson v. Sewall,* 183 Wash. 462, 48 P. (2d) 939; and *Fetterman v. Levitch,* 7 Wn. (2d) 431, 109 P. (2d) 1064) can be readily distinguished.

In the *Hamilton* case, *supra,* the jury was instructed on only the first two paragraphs of the rule as announced by the *Hadenfeldt* case, and, the disfavored driver having recovered, there was no occasion for the court to pass upon the question of whether an instruction based upon the fourth paragraph of the rule should have been given.

In the *Sewall* case, *supra,* there was no discussion of the applicability of the fourth paragraph in the *Hadenfeldt* case, and the contention as to the negligence of the disfavored driver hinged on whether or not he should have looked to his right a second time.

In the *Fetterman* case, *supra,* a judgment in favor of the plaintiff, who was the disfavored driver, was affirmed. The plaintiff would have cleared the intersection well before the defendant's car reached him, if he had not had to stop in the intersection to avoid hitting some children who stepped off the curb into the street directly in front of him. The questions argued on appeal and decided adversely to the favored driver were whether the disfavored driver should have looked to the right a second time, and whether he went into the intersection knowing that he might be called upon to stop directly in the path of the favored driver's car. The case could not come within the exception stated in the fourth paragraph of the rule in the *Hadenfeldt* case, because there was no deception by the favored driver, and the applicability of the fourth paragraph was not even discussed.

However, the *Hadenfeldt* case itself, *supra,* and *Gavin v. Everton,* 19 Wn. (2d) 785, 144 P. (2d) 735, do infer that there can be deception based on nothing more than excessive speed.

■ We also note the following cases, in which recoveries for disfavored drivers were affirmed or in which disfavored drivers were held to be entitled to have the question of the deceit of the favored drivers submitted to the jury, although excessive speed was the only deceit by the favored drivers: *Martin v. Westinghouse Electric & Mfg. Co.*, 162 Wash. 150, 297 Pac. 1098; *McIntyre v. Erickson*, 168 Wash. 355, 12 P. (2d) 399; *Brum v. Hammermeister*, 169 Wash. 659, 14 P. (2d) 700; *Huber v. Hemrich Brewing Co.*, 188 Wash. 235, 62 P. (2d) 451. In all of these cases, while not expressed, there was inherent in our conception of what constitutes deception, the familiar rule that a driver of an automobile upon the public highways has a right to assume that other drivers thereon will drive and operate their automobiles in compliance with the laws existing at the time and place of their operation, and that drivers upon the highways have the right to rely upon this assumption until they know or, by the exercise of ordinary care, should know to the contrary. In other words, if a disfavored driver is entitled to and does rely on that assumption and the favored driver is in fact exceeding the speed limit, the disfavored driver is deceived.

In all of the cases above referred to as being illustrative of situations in which there was no deceit by the favored driver except his excessive speed, it will be found that there either was no testimony as to the speed of the favored driver (and in such case the disfavored driver had the right to assume, as stated in *Huber v. Hemrich Brewing Co., supra,* that the favored driver was traveling at a lawful rate of speed when first seen by the disfavored driver), or it appeared from the testimony that there was nothing to indicate that the favored driver was traveling at a speed in excess of the legal limit when first seen by the disfavored driver.

Into the first of these two categories fall *Martin v. Hadenfeldt, supra,* and *Gavin v. Everton, supra,* relied upon by the appellants, together with *Huber v. Hemrich Brewing Co., supra.*

In the second category, we have *Martin v. Westinghouse Electric & Mfg. Co., supra; McIntyre v. Erickson, supra;* and *Brum v. Hammermeister, supra.*

■ However, the present case falls within neither category. The appellants here cannot rely on the assumption that respondents were operating their automobile in compliance with the laws existing at the time and place of its operation. The legal limit at which respondents could have been driving was twenty-five miles an hour. Appellant Robert Plenderlieth estimated the speed of respondents' automobile at thirty to thirty-five miles an hour. When a disfavored driver is not entitled to rely upon the assumption of lawful operation, he must assume responsibility for his own errors of judgment.

■ In Holy Writ, we find the phrase, "Whosoever is deceived thereby, is not wise." We now paraphrase that and say to the disfavored driver contemplating the crossing of an intersection, "Whosoever is deceived solely by the admittedly excessive and unincreased speed of an approaching vehicle upon his right, is not a reasonably prudent and cautious man." Knowing that the respondents were exceeding the speed limit and there being no evidence of any increase in speed on the part of respondents, appellants cannot now be heard to say that they were deceived by respondents' excessive speed. The trial court was correct in refusing to give an instruction embodying the fourth paragraph of the rule in the *Hadenfeldt* case.

■ Appellants make the further contention that the court erred in failing to give their proposed instruction No. 22, which reads as follows:

"While the law places upon the driver on the left the primary duty of avoiding an accident at an intersection, this duty is only primary and not absolute.

"While it is essential that the driver on the left look to his right on approaching the intersection, it is not necessary that he look at any special point. It is essential that he look when at a point at which he can see and reasonably decide whether he can proceed across the intersection with a fair margin of safety.

"It is not the law that a driver on the left who has once looked to his right from a proper point must necessarily look again or continuously. Whether such a driver acts reasonably in failing to look again or continuously while crossing the intersection is for you to decide under all the facts and circumstances shown by the evidence."

In the first place, the proposed instruction is not a correct statement of the law. We know of no case which holds that the first look of a driver on the left may be from a point within the curb line, as this instruction implies. *Fetterman v. Levitch, supra,* the very case from which appellants say the instruction is taken, makes that clear, for it is there said:

"The maximum distance from the curb line at which the required observation may be made necessarily depends upon the surrounding conditions and circumstances. In the case of a completely obstructed corner, one, for instance, where a building is constructed along the two property lines, such observation can, obviously, be made only at, or practically at, the curb line. In the case of a wholly unobstructed corner, as, for instance, one where there is an open, vacant lot, level with the street, and with nothing upon its surface, the observation, manifestly, can be made at an earlier point. *Between these two extremes, the required points of observation must necessarily vary."* (Italics ours.)

"At the curb line" is stated as one of the extremes; the other extreme is a variable distance back from the curb line. It is clear that the point referred to in the proposed instruction might not be within these extremes.

In the second place, the instruction is not applicable to the facts in this case. Appellant driver admittedly did not look from a point within the extremes, but from a point ten or twelve feet from the center line of the arterial, and while he was proceeding toward that center line at fifteen or eighteen miles an hour.

In the third place, appellants were not entitled as a matter of right to an instruction stating, in effect, that a driver who has once looked to his right from a proper point need not necessarily look again or continuously. Usually,

the statement that the question of whether or not a driver on the left should have looked again is a matter of fact for the jury, is not used with reference to a consideration of an instruction, but is used as an answer to the contention that the driver who looked only once was guilty of contributory negligence as a matter of law. See *Huber v. Hemrich Brewing Co., supra; Fetterman v. Levitch, supra.* By instruction No. 11, the trial court told the jury that it is the duty of one operating an automobile

" . . . to keep such a lookout as is reasonably adequate in view of all the surrounding facts and circumstances, and whatever dangers are reasonably to be apprehended."

Whether or not appellant driver should have looked to the right a second time was a matter that could have been argued to the jury under that instruction. The appellants were not entitled, as a matter of right, to have their argument that he was not negligent in failing to look a second time buttressed with the proposed instruction.

For any or all of the three reasons assigned, the trial court was justified in refusing to give appellants' proposed instruction No. 22.

Respondents contend that the judgment should be affirmed in any event, because the appellants were guilty of negligence, as a matter of law, in failing to stop before starting to cross an arterial. The appellants take the position that, there being no stop sign on West Green Lake way, they were under no obligation to stop before starting across the arterial. If that be conceded, there was certainly an obligation to look in both directions. The diagram makes very clear that, as appellants came up West Green Lake way to the intersection, they had an unobstructed view, at first ahead and then to their right, down East Green Lake way for more than a block. Had they looked as they came to the intersection, they could have seen respondents' car approaching sooner than they did, and at an angle which would have made possible a more accurate estimate of its speed. Instead, they entered the intersec-

tion and, when the front of their car was ten to twelve feet from the center line of the arterial and while they were proceeding forward at from fifteen to eighteen miles an hour, they looked to the right for the first time and saw respondents' car a block away. At fifteen miles an hour, practically all of appellants' car was going to be across that center line within one second. It will be conceded that

" . . . one looking to his right at an approaching car under such circumstances sees it coming toward him practically head-on, and oftentimes cannot judge accurately of its speed," *Martin v. Hadenfeldt, supra;*

but a driver who has had a more favorable opportunity to see an approaching car cannot ignore that opportunity and then be excused for his failure to yield a right of way on the plea that, since the other car was approaching him almost head on, he could not accurately judge its speed and was deceived thereby.

In *Hauswirth v. Pom-Arleau,* 11 Wn. (2d) 354, 373, 119 P. (2d) 674, we quoted with approval the following portion of our opinion in *Hefner v. Pattee,* 1 Wn. (2d) 607, 96 P. (2d) 583:

"The burden rests heavily upon the disfavored driver to look out for and give way to traffic which enjoys, as to him, the right of way. Appellant's automobile was there to be seen. The disfavored driver cannot escape the obligation which rests upon him, by saying that he did not see an approaching vehicle, if such vehicle was on the highway and plainly visible. *Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784; *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411; *Hoenig v. Kohl,* 182 Wash. 245, 46 P. (2d) 728.

"There can be no question but that, from any portion of the level part of Thirty-fifth avenue, one could see to the north along that street at least half a mile. *While we do not hold that respondent was bound to stop at the edge of the pavement, he was bound to look to his right as well as to his left before undertaking to cross the pavement, and he was obligated to look from a position where he could observe approaching traffic.*" (Italics ours.)

Rem. Rev. Stat., Vol. 7A, § 6360-88 [P.P.C. § 295-27], states that it is the duty of every operator of any vehicle, *on approaching* a public highway intersection, *to look out*

*for* and give right of way to vehicles on his right simultaneously approaching a given point within the intersection. In *Billingsley v. Rovig-Temple Co.,* 16 Wn. (2d) 202, 133 P. (2d) 265, we quoted with approval the following excerpt from *Strouse v. Smith,* 166 Wash. 643, 8 P. (2d) 411:

"Respondent's testimony conclusively establishes the fact that, except for his contributory negligence in failing *to comply with the statute above referred to,* the injury would not have occurred. He did not, *when approaching* the public highway intersection, look out for and give right of way to the vehicle on his right. He does not claim to have looked to the right until the front end of his car came into the intersection. . . .

"The testimony in the case clearly demonstrates that, except for the failure of respondent, when approaching the intersection, to look out for and give right of way to the vehicle on his right, he would have sustained no injuries. We hold, as a matter of law, that respondent was *guilty of contributory negligence,* and that the trial court erred when it granted a new trial on the ground that it had erred in sustaining appellants' challenge to the sufficiency of the evidence."

■ Reasonable minds cannot differ on the proposition that appellant driver here did not perform the duty of looking to the right when approaching this intersection, nor from a point at which he could see and reasonably decide whether or not he could proceed across the intersection with a fair margin of safety.

■ It further seems apparent to us that, under appellant driver's own estimates of speed and distance, he did not meet his primary duty of avoiding a collision "with a reasonable regard to the maintenance of a fair margin of safety at all times." When he first looked to his right and saw respondents' car, he had about sixty-five feet to go to clear the intersection. He estimated that respondents' car was two hundred forty feet away; at thirty-five miles an hour, it would be in the intersection in less than five seconds. At appellants' then speed of fifteen miles an hour, three seconds would be required to clear the intersection. At that speed, then, he had less than two seconds to take

the right of way from the person who was entitled to it. However, he increased his speed to a maximum of not more than twenty-three miles an hour. If he averaged twenty miles an hour after he saw respondents' car, it still would take him more than two seconds to clear the intersection, leaving him less than three seconds to take the right of way. The language used in *Emanuel v. Wise*, 11 Wn. (2d) 198, 118 P. (2d) 969, and quoted approvingly in *Billingsley v. Rovig-Temple Co., supra,* is most apt:

"In other words, respondents' [defendants'] truck, appellants' [plaintiffs'] operator judged, was not more than (measured by time) six seconds from the point which both trucks were simultaneously approaching. Appellants' truck was not more than three to four seconds west of that point. That is to say, there was a margin of not more than three to four seconds, of which under his own testimony appellants' operator was aware, in which to clear the intersection before the favored driver [respondent] arrived at the point where the collision occurred.

"Appellants' operator gave no heed to the primary duty resting upon him, as the disfavored driver on the left, of avoiding the accident; a duty which he must perform with reasonable regard to the maintenance of a fair margin of safety at all times. This he did not do. According to his own testimony he had from two to four seconds to take the right of way within the intersection from the one who was entitled thereto. He raced for it and lost. His negligence is established; it contributed to, and was the proximate cause of, the collision."

There being no error in the refusal of the trial court to give the instructions requested by appellants, and any right of recovery by appellants being defeated, in any event, by their own contributory negligence, the judgment appealed from is affirmed.

MALLERY, C. J., ROBINSON, and JEFFERS, JJ., concur.

STEINERT, J., concurs in the result.